Mrs. Anna Lucas v. W. W. Lucas.

No. 2200. Decided February 21, 1912.

1.—Homestead—Conversion—Protection of Proceeds.

The homestead of the husband and wife is not subject to partition after his death while she survives and claims its exemption, and the same rule applies to its proceeds when converted into money. (Pp. 638-641.)

2.—Same.

Exemption attaches to the proceeds of the homestead when converted into cash by proceedings involuntary on the part of the homestead beneficiary (as

on its condemnation for public purposes, if such condemnation may lawfully be had) as well as to the proceeds of voluntary sale, or of insurance on the property when burned, and for like reasons. (P. 639.)

### 3.—Same—Condemnation—Proceeds—Partition or Reinvestment.

The homestead, community property occupied by the surviving widow, having been condemned under the right of eminent domain, with payment of the proceeds awarded by the judgment into the registry of the court for the benefit of the parties entitled, such proceeds were not subject to partition between the widow and the heirs of her deceased husband. Her homestead rights therein should be protected by reinvestment of the entire sum in a new home, to be held under the same title as the one taken under the judgment of condemnation. (Pp. 638-642.)

### 4.—Same—Powers of County Court.

Though the judge of the County Court was not a trustee for purpose of reinvestment of money paid into the registry of his court on condemnation of a homestead, his duty to see that the money so in the registry be properly applied for the benefit of the parties entitled and the necessity of protecting homestead rights in such fund would confer power to have the same reinvested in a new homestead under order of the court. (P. 642.)

Questions certified from the Court of Civil Appeals for the First District, in an appeal from Anderson County.

*Gregg & Brown,* for appellant.—This court has held that where a homestead has been destroyed by fire, the insurance money derived from a policy thereon takes the place of and stands for the destroyed home, and is exempt under the Constitution from garnishment for the debts of the head of the family. Constitution, art. 16, sec. 50; Cameron v. Fay, 55 Texas, 58; Chase v. Swayne, 88 Texas, 218. Also that money recovered in a suit for damages to exempt property can not be subjected to the payment of the debts of the owner of the exempt property. Cone v. Lewis, 64 Texas, 332; Howard v. Tandy, 15 S. W., 578; Wittenberg v. Lloyd, 49 Texas, 642.

When the homestead is converted into money without the voluntary act of its owner there is certainly no intentional or implied waiver of the exemption, and equitably, at least, the proceeds of such conversion ought to be regarded as still impressed with and protected by the homestead exemptions. Walsh v. Hosine, 36 Ill., 238; Mitchell v. Milburn, 11 Kans., 628; Dearing v. Thomas, 25 Ga., 223; Keyes v. Rivies, 37 Vt., 260; Maxey v. Loyal, 38 Ga., 531; Wright v. Westheimer, 2 Idaho, 962; Morgan v. Stearns, 41 Vt., 398; Fogg v. Fogg, 40 N. H., 282; Bank v. Hawk, 4 Allen, 347; Below v. Robbins, 76 Wis., 600; Andrews v. Rowan, 28 How. Pr., 126; Tilotson v. Wolcott, 48 N. Y., 188; Mudge v. Lawning, 68 Iowa, 463; Falconer v. Hedd, 31 Ala., 513.

Where a homestead or a part of it has been taken in condemnation proceedings under the authority of eminent domain by a railroad company and the value of the property so taken as fixed by the appraisers deposited in the registry of the court, the money is exempt from garnishment for the debts of the homesteader. Brooks v. Collins, 74 Ky. (11 Bush), 622; Kaiser v. Seaton, 62 Iowa, 463.

*A. G. Greenwood,* for appellee.—Where the survivor of a community estate voluntarily elects to sell the homestead, she thereby waives her

right to the use and occupancy of same during her lifetime, and she can not become a party to a condemnation proceeding for the fraudulent purpose of depriving one of the heirs of his interest in the money standing in lieu of homestead.   York v. Hutcheson, 83 S. W., 895; Speer's Law of Married Women, sec. 365; San Antonio v. Grandjean, 91 Texas, 434.

MR. JUSTICE DIBRELL delivered the opinion of the court.

This cause comes before this court upon certified question from the Honorable Court of Civil Appeals of the First District, as follows:

"In the above styled cause pending in this court on appeal from the County Court of Anderson County the record discloses the following facts:

"In a condemnation proceeding instituted by the city of Palestine, the community homestead of appellant, Anna Lucas and her deceased husband, L. Lucas, was condemned for street purposes.   The appellants, Anna Lucas and John E. Lucas, E. L. Lucas and W. W. Lucas, who are the children of Anna and L. Lucas, were parties defendants in said proceedings.   The commissioners of appraisement valued the property at $1,800.   All parties agreed that this award should be made final, which was done and the money paid into court by the city.   Thereupon the appellant, Mrs. Anna Lucas, presented a motion asking the court to order the whole of said sum of $1,800 invested in another homestead for her use and benefit.   Appellants, John E. and E. L. Lucas, joined in this motion and requested the court to turn over their two-sixths interest in the $1,800 to appellant, Mrs. Anna Lucas.   Appellee, W. W. Lucas, resisted the motion and asked that the $1,800 be partitioned and that he be awarded a one-sixth interest therein.   The court refused to set aside the whole of the fund to appellant, Anna Lucas, but gave her her one-third interest therein and also the two-sixths interest of appellants, John E. and E. L. Lucas, and awarded to appellee, W. W. Lucas, his one-sixth interest.

"Appellants contend that the sale of the homestead having been involuntary, the proceeds of such sale was not under the Constitution and laws of this State subject to partition between the heirs of L. Lucas, deceased, against the homestead rights of his surviving wife, Anna Lucas.

"Because our jurisdiction in this case is final and the question presented is one of much importance, we deem it best to certify for your determination, the questions:

"Did the trial court err upon the facts stated in partitioning the $1,800 awarded by the commissioners of condemnation and awarding to W. W. Lucas such interest in such fund as he held in the condemned property as heir of his deceased father?"

No question is raised in the record as to the power of the city of Palestine to condemn for street purposes the homestead of Mrs. Lucas and hence that phase of the case will not be considered.

In the light of the facts stated we answer the question in the affirmative.   In our opinion the trial court erred in making partition of the proceeds of the condemned homestead against the protest of Mrs. Lucas, who occupied it at the time of the condemnation proceedings, and in

refusing to direct the reinvestment of such proceeds in another homestead with the same tenure of title in the fee of such newly acquired homestead as the one taken under the condemnation proceedings.

That provision of the Constitution of this State, section 52 of article 15, relating to the question under consideration is as follows:

"Section 52. On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having the jurisdiction, to use and occupy the same."

Other provisions of law relating to the partition of the homestead are of the Revised Statutes, as follows:

"Article 2057. The homestead shall not be partitioned among the heirs of the deceased during the lifetime of the widow, or so long as she may elect to use or occupy the same as a homestead, . . ."

"Article 2058. When the widow dies or sells her interest in the homestead, or elects to no longer use or occupy the same, as a homestead, . . . it may be partitioned among the respective owners thereof in like manner as other property held in common."

As will be seen neither the Constitution nor the statutes make provision for the contingency where the occupant is dispossessed and the homestead is by involuntary disposition turned into cash, and the question largely depends upon the construction to be given the Constitution and statutes relating to the subject of homestead exemptions.

Provision has been made for protecting the proceeds of the voluntary sale of the homestead from garnishment or forced sale within six months after such sale. Art. 2336, Rev. Stats. No good reason is apparent to us why such proceeds when realized from an involuntary sale or disposition of the homestead, should not be likewise protected from partition which is a form of forced process, as it relates to the partition of the homestead between the surviving widow and the heirs of her deceased husband, but on the contrary it appears to us that there is greater reason why such proceeds should be protected from forced sale or partition when arising from an involuntary disposition of the homestead than when it is voluntarily disposed of or converted into money.

The decisions of this State have been uniform so far as we know in holding that the proceeds of the homestead are entitled to the same protection of exemptions, for a reasonable time at least, from forced sale as the homestead itself, when resulting from various causes involuntarily transferring the homestead into cash.

Where the homestead had been destroyed by fire resulting from inevitable accident the money realized from insurance on the property was held to be exempt from forced process, in the case of Cameron v. Fay, 55 Texas, 58. That case has been followed with approval by a number of cases in this State, notably that of Chase v. Swayne, 88 Texas, 218, in which the opinion was written by the present Chief Justice, indicating a most thorough consideration of the subject. In

commenting on the Cameron-Fay case, as to whether the ruling there was the result of a proper construction of the Constitution, or of judicial legislation, Chief Justice Brown said:

"It is claimed by counsel for defendant in error, that the exemption of the money involved does not arise out of the Constitution, but rests upon the decision of Cameron v. Fay, in which an equitable construction, as it is called, was placed upon the Constitution, thereby creating an exemption which did not arise out of its language. If this were correct, that case should be overruled. The decision of a court contrary to the Constitution of a State can have no validity; it is the exercise of unauthorized power on the part of the court."

"There is a marked distinction between liberal construction of Constitutions and statutes, by which courts, from the language used, the subject matter and purposes of those framing them, find out their true meaning, and the act of the court in engrafting upon a law or Constitution something that has been omitted, which the court believes ought to have been embraced. The former is a legitimate and recognized rule of construction, while the latter is *judicial legislation,* forbidden by article 2, section 1, of the Constitution of the State, by which the powers of the government are distributed to three departments, the legislative, executive and judicial, forbidding any one to exercise the powers conferred upon another. The protection claimed for insurance money upon a homestead does not depend upon the case of Cameron v. Fay, but upon the Constitution, the meaning and intent of which the court, in Cameron v. Fay, by fair construction, ascertained to include the proceeds of such policies."

So where the homestead was established on a tract of 520 acres of land, owned jointly with others, and upon partition sought by the tenants in common with the homestead claimant, it having been adjudged impracticable to award such homestead claimant the part occupied and improved by him, the proceeds arising from the sale of such land to effect partition was held exempt in the case of Jenkins v. Volz, 54 Texas, 636, and the ruling there announced has been since followed with approval by this and other courts in this State. In the course of discussion in the case of Jenkins v. Volz, the court laid down this rule:

"The constitutional protection to a homestead of 200 acres should be enforced in its spirit, and so enforced protects the homestead, when established on land owned jointly with others, to the extent of an undivided interest of 200 acres. If, on partition with their cotenants, the part of the tract occupied and improved by appellants should be allotted to them, their homestead rights to 200 acres, including their improvements, would be complete, notwithstanding the mortgage. If, however, it should be found impracticable to allot to appellants the part occupied and improved by them, that fact should not and would not operate to defeat or lessen their homestead. Even if, in making partition, the entire tract had to be sold, the homestead right would attach to and be protected in the proceeds of the sale."

In the case Kirkwood v. Domnau, 80 Texas, 648, following the rule established in Jenkins v. Volz, the court held that the costs of the partition proceedings properly adjudged against the homestead claimant in a suit by tenants in common for partition, and where sale was

made to effect such purpose, the proceeds of the homestead thus converted into money was not subject to the payment of costs directed by the judgment of the court to be deducted from the shares in the proceeds belonging to the respective parties. In this ruling this court held strictly that the proceeds of a homestead, when converted into money by involuntary process, could not be subjected to any use not specially enumerated in the Constitution.

In line with the above holding are those cases beginning with Wood v. Wheeler, 7 Texas, 23, in which it has been held that where the excess value over the homestead exemptions was sought and obtained by forced sale of the homestead and converted into money, the sum representing the value of the homestead is exempt in its changed form.

The idea of the homestead exemption as embodied in law is strictly of American origin. The first statute of this kind was enacted by the Republic of Texas, January 26, 1839. The first constitutional guarantee of homestead exemption was that of the Constitution of Texas in 1845, and ever since that date the several Constitutions of this State have been so framed as to carefully preserve that guarantee with limitations removed and benefits enlarged, and the Legislature of this State has carefully, as suggested by Judge Brown in Chase v. Swayne, supra, by constitutional amendments and statutory enactments met and dispelled every limitation or burden placed upon the homestead by judicial construction, manifesting the evident policy of surrounding the homestead with the largest liberality. In addition to this our courts have responded to the legislative policy of liberal homestead exemptions, by adopting the most liberal rules of construction to carry out the legislative intent.

If a city, in the exercise of its power of eminent domain, has power to condemn the homestead of a surviving widow for street uses, which may be conceded for the purpose of this illustration, and the proceeds of such homestead paid into the registry of the court under such proceeding becomes subject to partition, then the beneficient provisions of the Constitution and statutes guaranteeing and protecting the homestead may be entirely defeated by such condemnation proceedings against the election of the surviving widow. This would be possible for the reason that the surviving wife is as fully protected in the use and occupancy of a homestead on the separate property of her deceased husband as she would be on property that belonged to their community estate. If the homestead of the widow on the separate property of the husband can thus be converted into money and the cash become subject to partition, she would be left without a homestead and without means of acquiring one by a reinvestment of such proceeds, the bulk of the proceeds going, under the laws of inheritance, to the heirs of the deceased husband with only such interest as may be given the wife under the laws of descent and distribution. This court can not subscribe to a doctrine that by such indirect method the purpose and intent of the Constitution and laws, to protect the widow in the enjoyment, use and shelter of the homestead, may be defeated.

It is true the law makes no provision for reinvesting the proceeds or the surplus of the proceeds of the homestead when converted into

money by forced sale or by any other involuntary process.  But the purposes of the law must be given effect where it may be done by fair and reasonable judicial construction and without invading the province of the lawmaking power.

From the ruling of this court as above indicated we are clearly of opinion the proceeds of the condemned homestead were not subject to partition between the widow, Mrs. Lucas, and the heirs of her husband against her election.  It is also clear, as we think, that such proceeds were upon the same basis of ownership as the homestead before its conversion into money and that the widow owned one-half and the heirs of her husband the other half, the whole being subject to reinvestment in another homestead in such manner as to indicate by proper recitations, in the judgment of the court conducting the condemnation proceedings, the interest therein of the interested parties subject to the homestead use in the widow during her life or for such period as she may elect to use same as a homestead.

While it may be true that the judge of the County Court does not stand in the relation of trustee to invest the proceeds of the homestead thus condemned, but since the method of procedure is such, condemnation proceeding requires that such damages or appraised value of the property as made by the commissioners to be deposited or otherwise secured for the benefit of the interested parties, and since the money has been deposited in the registry of the court, it becomes his duty to see that it is properly disposed of.  He is not authorized to make partition of the money nor to pay it over to the homestead claimant but he is authorized and we conceive it to be his duty under the circumstances of this case to protect all the parties interested by authorizing and directing its reinvestment in another homestead as heretofore indicated.