**REVISED APRIL 10, 2014**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 9, 2014

Lyle W. Cayce
Clerk

No. 10-10882

In the Matter of: ODES HO KIM,

Debtor.

_____

ODES HO KIM; CHONG ANN KIM,

Appellants,

v.

DOME ENTERTAINMENT CENTER, INC.,

Appellee.

Appeals from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, OWEN, and HAYNES, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

A non-debtor spouse contends that her homestead rights in the Texas residence that she shares with her husband, the debtor in bankruptcy, preclude a forced sale of the property and alternatively, that if a sale occurs, she must be compensated for the loss of her homestead interest in the property. The district

No. 10-10882

court affirmed the bankruptcy court's holding that the non-debtor spouse's homestead rights were limited to the dollar amount of the exemption in 11 U.S.C. § 522(p). The district court also affirmed the bankruptcy court's holding that there was no unconstitutional taking of the value of the non-debtor spouse's interest in the homestead. We affirm.

# I

Odes Ho Kim purchased and took title in his name to a home in Irving, Texas where he and his wife Chong Ann Kim resided at all times pertinent to this case. The purchase price of the home was $1,048,028.36. At the time of the purchase, litigation was pending between Mr. Kim and Appellee Dome Entertainment Center, Inc. (Dome) in California, and approximately two years after Mr. Kim had purchased the residence, judgment was entered against him for more than $5,000,000. Less than 1,215 days after the residence was acquired by Mr. Kim, Dome instituted the underlying bankruptcy proceedings by filing an involuntary petition for relief against Mr. Kim. Following a trial, the bankruptcy court entered an order for relief under Chapter 7 of the Bankruptcy Code. Mr. Kim subsequently converted the case to a Chapter 11 proceeding and now operates as a debtor-in-possession.

Pursuant to 11 U.S.C. § 522(b)(3)(A), Mr. Kim claimed an unlimited homestead exemption under Texas law for the residence. Dome objected, asserting that, pursuant to § 522(p), the exemption should be limited to a $136,875. The bankruptcy court sustained the objection.

Mr. Kim then instituted the underlying adversary proceeding, seeking a declaratory judgment "to determine the extent of the interest of the Debtor's bankruptcy estate in and to the Property pursuant to 11 U.S.C. § 541," and to determine Mrs. Kim's rights and claims to the residence by virtue of her claim that it constitutes her homestead under Texas law. Dome intervened, and Dome and Mrs. Kim filed cross motions for summary judgment seeking a

No. 10-10882

determination of whether Mrs. Kim retained an exempt homestead interest in the residence and, if so, whether that interest precluded a trustee or debtor-in-possession from forcing a sale of the property or, alternatively, required Mrs. Kim to be compensated in the event of a forced sale.

The bankruptcy court denied Mrs. Kim's motion and granted Dome's motion in part, holding that 11 U.S.C. § 522(p) overrides state law to the extent that state law would exempt the value of a homestead in excess of the amount specified in § 522(p). The bankruptcy court held that, as Mr. Kim's non-debtor spouse, Mrs. Kim did not have a "separate and distinct exempt homestead interest in the property that would entitle her to compensation or to prevent the sale of the Property." The bankruptcy court also denied Dome's motion in part, holding that fact issues remained as to whether a portion of the residence constituted Mrs. Kim's separate property or sole managed community property and was therefore not part of the bankruptcy estate under 11 U.S.C. § 541.

After the bankruptcy court issued its summary judgment order, the district court granted each of the parties leave to file an interlocutory appeal of the order and consolidated the three appeals. While that appeal was pending in the district court, the parties entered into a settlement agreement and resolved by stipulation the outstanding fact issues regarding the nature of the residential property, agreeing in pertinent part that, immediately prior to the petition date, the residence constituted (a) Mr. Kim's separate property, (b) Mr. Kim's sole management community property, or (c) the joint management community property of Mr. and Mrs. Kim. Based in part on this stipulation, the Bankruptcy Court entered an agreed Final Judgment, which was not separately appealed to the district court.

The district court subsequently affirmed the summary judgment order, holding that the Bankruptcy Code preempts Mrs. Kim's homestead property rights under state law and that Mrs. Kim has no right, as a non-debtor, to assert

3

No. 10-10882

homestead rights to prevent the forced sale of the residence.   The district court further held that Mrs. Kim's homestead exemption is not a vested property right and that she was not entitled to compensation, beyond her homestead interest in the capped exemption under § 522(p), upon the sale of the residence.

## II

As an initial matter, Dome contends that both the district court and this court lack jurisdiction over the appeal of the bankruptcy court's summary judgment order.   Dome argues that the parties' settlement agreement and the bankruptcy court's entry of the agreed Final Judgment, which incorporated the interlocutory summary judgment order and was not separately appealed, rendered the appeal to the district court moot.   Although Dome raised this issue for the first time on appeal, subject matter jurisdiction cannot be waived.[1]

Dome cites *Black v. J.I. Case Co.*[2] and *Becker v. Tidewater, Inc.*,[3] among other decisions, for the general proposition that "an interlocutory order denying summary judgment is not to be reviewed where final judgment adverse to the movant is rendered on the basis of a subsequent full trial on the merits."[4]   Those cases are inapposite.   The legal issues on which the bankruptcy court's order granted summary judgment in favor of Dome are on appeal; the fact issues that led to the bankruptcy court's denial of summary judgment in that same order were subsequently resolved by stipulation.   There has been no jury trial on the merits, and the bankruptcy court's Final Judgment adopted and incorporated the interlocutory summary judgment order and reflected the parties' settlement

---

[1]  *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 802 (5th Cir. 2011) ("Litigants cannot bestow subject matter jurisdiction on federal courts by waiver or consent." (citation omitted)).

[2]  22 F.3d 568, 570 (5th Cir. 1994).

[3]  586 F.3d 358, 365 n.4 (5th Cir. 2009).

[4]  *Black*, 22 F.3d at 570 (reaffirming *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 251 n.9 (5th Cir. 1984), and *Zimzores v. Veterans Admin.*, 778 F.2d 264, 267 (5th Cir. 1985)).

agreement and stipulation as to fact issues. The district court's order affirming the bankruptcy court was entered after the bankruptcy court entered its Final Judgment.

Despite the parties' settlement agreement, the settlement terms themselves are dependent on the outcome of the appeal. Mr. Kim agreed to execute a secured promissory note payable to Dome, the amount of which will be adjusted depending on the resolution of issues in the "final order [on appeal] disposing of [the adversary proceeding]." The Supreme Court and several circuit courts have held that such arrangements prevent an appeal from being mooted by settlement. For example, in *Nixon v. Fitzgerald*,[5] involving an interlocutory appeal of an order denying absolute immunity, the Supreme Court evaluated the effect of a settlement reached by the parties after the petition for certiorari and opposition were filed. The agreement provided for payment of liquidated damages, the amount of which was contingent upon the Court's resolution of the absolute immunity issue.[6] The Court concluded that "[t]he limited agreement between the parties left both petitioner and respondent with a considerable financial stake in the resolution of the question presented," and that the case therefore "remain[ed] definite and concrete, touching the legal relations of parties having adverse legal interests."[7] Similarly, the parties before us continue to have a financial stake in the outcome of this appeal. The appeal is not moot, and we have jurisdiction to decide the merits of the issues presented.

---

[5] 457 U.S. 731, 743-44 (1982).

[6] *Id.*

[7] *Id.* at 744 (internal quotation marks and citation omitted). *Cf. Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 223-24 (3d Cir. 2000) (parties' settlement agreement, pursuant to which settlement amount was contingent on outcome of issue on appeal, did not moot the controversy).

No. 10-10882

## III

In a bankruptcy appeal, this court "review[s] the decision of the district court by applying the same standard to the bankruptcy court's findings of fact and conclusions of law as the district court applied."[8] The bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo.[9] This case presents only questions of law, which are whether the bankruptcy court could require the sale of the Kims' homestead, and if so, whether Mrs. Kim must be compensated for her homestead interest in the residence.

## IV

The Kims contend that because Mrs. Kim was not a party to her husband's bankruptcy proceedings and her homestead interest in the residence was independent of her husband's interest in that property, the bankruptcy court could not order a forced sale of their home. They argue that Texas law is paramount and that the Bankruptcy Code does not provide for the sale of interests that are not part of the bankruptcy estate. Mrs. Kim's homestead rights, they maintain, are her separate property, entirely independent of her husband's homestead rights, and never became part of the bankruptcy estate.

The Texas Constitution and the Texas Property Code protect property that qualifies as a homestead from "forced sale[] for the payment of all debts," with enumerated exceptions such as a purchase money lien, property taxes, and home improvement debts[10] that are not at issue here. Other Texas statutes provide

---

[8] *Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.)*, 258 F.3d 385, 387 (5th Cir. 2001).

[9] *Id.*

[10] TEX. CONST. art. XVI, § 50; *see also* TEX. PROP. CODE ANN. § 41.001 (West 2000) (providing that, with a few exceptions similar to those contained in the Texas Constitution, a homestead is "exempt from seizure for the claims of creditors").

6

No. 10-10882

additional homestead protections to spouses.[11]  It is undisputed that the Kims'
residence is their homestead under Texas law.  The Bankruptcy Code provisions
in effect at the time Mr. Kim purchased the homestead property  allowed Texas
debtors to take full advantage of the unlimited homestead exemption under state
law.[12]

In 2005, however, Congress enacted 11 U.S.C. § 522(p) as part of the
Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA).[13]
Section 522(p) expressly "limits the [Texas] homestead exemption under certain
circumstances,"[14] providing in pertinent part:

> [A]s a result of electing under subsection (b)(3)(A) to exempt
> property under State or local law, a debtor may not exempt any
> amount of interest that was acquired by the debtor during the
> 1215-day period preceding the date of the filing of the petition that
> exceeds in the aggregate [$136,875][15] in value in . . . real or personal

---

[11] *See* TEX. PROP. CODE ANN. § 41.004 ("a homestead cannot be abandoned without the consent of the claimant's spouse"); TEX. FAM. CODE ANN. § 5.001 (West 2006) ("Whether the homestead is the separate property of either spouse or community property, neither spouse may sell, convey, or encumber the homestead without the joinder of the other spouse except as provided in this chapter or by other rules of law."); TEX. PROB. CODE ANN. §§ 283, 284 (West 2003) (upon death of one spouse, a "homestead shall descend and vest in like manner as other real property," but "shall not be partitioned among the heirs of the deceased during the lifetime of the surviving spouse, or so long as the survivor elects to use or occupy the same as a homestead"), *now codified at* TEX. ESTATES CODE ANN. §§ 102.003, 102.005 (West 2014).

[12] *See* 11 U.S.C. § 522(b)(1), (3) (allowing debtor to exempt property under applicable state law); TEX. PROP. CODE ANN. § 41.001 (providing homestead exemption under Texas law that is unlimited in amount).

[13] Pub. L. No. 109-8, § 322, 119 Stat. 23, 96-97 (2005).

[14] *Wallace v. Rogers (In re Rogers)*, 513 F.3d 212, 217 (5th Cir. 2008).

[15] The Judicial Conference of the United States adjusted the dollar amount from $125,000 to $136,875 in 2007, from $136,875 to $146,450 in 2010, and from $146,450 to $155,675 in 2013.  *Id.* at 217 n.2 (citing 72 Fed. Reg. 7082-01 (Feb. 14, 2007)); 78 Fed. Reg. 12089-01 (Feb. 21, 2013)*;* 75 Fed. Reg. 8747-01 (Feb. 25, 2010).  At the time the bankruptcy petition was filed in this case in December 2007, the relevant dollar amount was $136,875.

No. 10-10882

property that the debtor or dependent[16] of the debtor claims as a homestead.[17]

The House committee report on the BAPCPA, which has been cited by this court, states that this section "restricts the so-called 'mansion loophole'" that allows "debtors living in certain states [to] shield from their creditors virtually all of the equity in their homes" and results in some debtors relocating to those states to take advantage of the loophole.[18]  In conjunction with that purpose, the limitation on the homestead exemption "does not include any interest transferred from the debtor's previous principal residence (which was acquired prior to the beginning of such 1215-day period) into the debtor's current principal residence, if the debtor's previous and current residences are located in the same State."[19]  The Kims have not contended in these proceedings that either of them transferred any previous interest in a principal residence to the property that is currently their residence.

It is undisputed that the Kims acquired their residence within 1,215 days of the date of the bankruptcy filing.  Dome contends that it is entitled to force the sale of the Kims' residence and to apply all proceeds above the dollar amount of the capped homestead exemption under § 522(p) ($136,875 at the time of the bankruptcy filing) to satisfy its judgment against Mr. Kim.

The Kims contend that Mrs. Kim's homestead rights are her separate property and never became part of the bankruptcy estate.  Her separate property, she asserts, is not an interest of "the debtor [or] the debtor's spouse in community property as of the commencement of the case" within the meaning

---

[16]  "Dependent" is defined in § 522 to include a spouse.  11 U.S.C. § 522(a)(1).

[17]  *Id.* § 522(p)(1)(D).

[18]  H.R. Rep. 109-31, pt. 1, at 15-16 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 102, *cited by In re Rogers*, 513 F.3d at 227.

[19]  11 U.S.C. § 522(p)(2)(B).

of § 541(a)(2).[20]  Even were we to accept this argument, it would not affect our analysis of the bankruptcy court's authority to order a forced sale of the Kims' residence.  Both the United States Supreme Court and the Supreme Court of Texas have rejected arguments similar to those urged by the Kims.

In *United States v. Rodgers*,[21] a federal tax statute, 26 U.S.C. § 7403, authorized the judicial sale of property to satisfy the tax indebtedness of delinquent taxpayers.  The issue was whether § 7403 empowered a federal district court to order the sale of a Texas family home in which a wife, who was not liable for any of the taxes owed by her husband, had a homestead interest.[22] The Supreme Court held that § 7403 expressly permitted a forced sale and that the exercise of the power granted by § 7403 was "the exercise of a sovereign prerogative . . . ultimately grounded in the constitutional mandate to 'lay and collect taxes.'"[23]

The Bankruptcy Code similarly contains express authorization to sell property of the bankruptcy estate, notwithstanding the fact that a third party may have an interest in that property.[24]  The parties have not cited any specific subsections of 11 U.S.C. § 363, nor have they briefed the applicability of any of its provisions to the facts before us.  We therefore do not resolve today whether the sale of a Texas residence that is the homestead of a non-debtor spouse would come within more than one of the sale provisions in § 363, such as subsection (g), which provides for the sale of property "free and clear of any vested or contingent

---

[20] *Id.* § 541(a)(2).

[21] 461 U.S. 677 (1983).

[22] *Id.* at 680 687.

[23] *Id.* at 697 (quoting U.S. CONST., Art. I, § 8, cl. 1; U.S. CONST. amend. XVI)

[24] *See generally* 11 U.S.C. § 363.

right in the nature of dower or curtesy,"[25] or subsection (h), which provides for the sale of the estate's interest and the interest of any co-owner in property in which the debtor had an undivided interest as a tenant in common, joint tenant, or tenant by the entirety,[26] or another, more generally applicable, subsection of § 363. We do note that the Supreme Court of Texas has held that when more than one person owns an interest in homestead property, there is a cotenancy.[27] The statutory authority of the bankruptcy court to authorize the sale of the Kims' residence resides in 11 U.S.C. § 363, and that statutory authority is derived from the bankruptcy power of Congress under Article I, Section 8, Clause 4 of the Constitution.

The Supreme Court of Texas has recognized that Texas homestead laws cannot preclude the enforcement of a federal law that permits the sale of, or foreclosure upon, a homestead.[28] Although whether a bankruptcy court has the authority to order the sale of a Texas homestead is a question of federal, not state, law, the Supreme Court of Texas recognized in *Benchmark Bank v. Crowder* that "[u]nder the Supremacy Clause of the United States Constitution, the IRS may obtain a valid federal tax lien and enforce its lien against a Texas homestead"[29] even though federal tax liens were not identified in the provisions

---

[25] *Id.* § 363(g).

[26] *Id.* § 363(h).

[27] *See Laster v. First Huntsville Properties Co.*, 826 S.W.2d 125, 131 (Tex. 1991) (holding that former wife's interest in her homestead was held in cotenancy with a mortgagee who succeeded to her former husband's 26.17% fee simple interest); *Sayers v. Pyland*, 161 S.W.2d 769, 773 (Tex. 1942) (holding that it is "well settled that, while one tenant in common may acquire homestead rights in the common property, the rights so acquired are not superior to the rights and remedies of the other joint owners. He can acquire no such rights as will prejudice or in anywise interfere with the rights of the other tenants in common.").

[28] *See Benchmark Bank v. Crowder*, 919 S.W.2d 657 (Tex. 1996).

[29] *Id.* at 660.

of the Texas constitution (as it existed at the time of the facts giving rise to the controversy) as valid against a homestead.[30]  In *Benchmark Bank*, the Internal Revenue Service (IRS) assessed liens against a husband's property, including homestead property, for taxes he owed, although his wife was not liable for those taxes.[31]  The husband and his wife obtained a loan from a bank to pay the tax debts and signed a deed of trust creating a lien on the couple's homestead.[32]  The deed of trust provided that to the extent that the loan proceeds were used to pay any outstanding liens, the bank would be subrogated to any and all rights and liens.[33]  The couple paid the loan proceeds to the IRS, and the IRS released its lien.[34]  The couple then defaulted on the bank loan, and the bank foreclosed on the homestead.[35]  The Texas court held that the bank was subrogated to the federal government's tax lien against the homestead and could enforce the lien through foreclosure,[36] even though the IRS had assessed no taxes against the wife and no tax liens attached to her property.[37]  The Texas court explained that "the Bank is subrogated to a valid federal tax lien against the [couple's] homestead and may enforce its lien through foreclosure."[38]  The Texas court concluded, however, that "the Bank must compensate [the wife] for the loss of

---

[30] *Id.* (citing TEX. CONST. art. XVI, § 50).

[31] *Id.* at 659.

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.* at 660.

[37] *Id.* at 662.

[38] *Id.*

11

her separate, vested interest in the homestead upon foreclosure."[39] We consider in the next section of this opinion whether Mrs. Kim is entitled to compensation for her homestead interest in her residence upon forced sale of that property in a bankruptcy court. With regard to the authority of the bankruptcy court to order the sale of the Kims' residence, even though Mrs. Kim is not a debtor in bankruptcy and has a homestead interest independent of her husband's in the residence that they share, the Texas Supreme Court's decision in *Benchmark Bank* supports the unremarkable proposition that a right of sale under federal law may be enforced as against a non-debtor spouse, in spite of the non-debtor spouse's homestead rights.

## V

The remaining question is whether, upon a forced sale of the Kims' residence in the bankruptcy proceedings, Mrs. Kim would be entitled to compensation for her homestead interest above and beyond the maximum $136,875 exemption under § 522(p). Under the BAPCPA, a Texas debtor must select between federal exemptions set forth in § 522(d) and the exemptions provided under state law.[40] Mr. Kim elected to exempt the residence that he and Mrs. Kim share under state law.[41] The cap on the dollar amount of that election for homestead property under § 522(p) was $136,875 at the time that Mr. Kim made the election.

The parties have stipulated that, when the bankruptcy petition was filed in this case, the Kims' residence constituted (a) the separate property of Mr. Kim, (b) Mr. Kim's sole management community, or (c) the joint management

---

[39] *Id.*

[40] 11 U.S.C. § (b)(1). Texas could, under the BAPCPA, force Texas debtors to utilize their state, rather than federal, exemptions, but Texas has not done so.

[41] *See Perry v. Dearing (In re Perry)*, 345 F.3d 303, 308 n.5 (5th Cir. 2003); *see also Owen v. Owen*, 500 U.S. 305, 308 (1991).

No. 10-10882

community property of Mr. and Mrs. Kim. It is undisputed that under Texas law, if the residence were not a homestead, it would be property that Mr. Kim's creditors could reach to satisfy debts he incurred because the residence is either his separate property, community property he solely managed, or jointly managed community property.[42] As a result, it is also undisputed that the fee simple interest in the residence is the property of the bankruptcy estate under either subsection (a)(1) or (a)(2)(A) of 11 U.S.C. § 541.[43]

Mrs. Kim does not contend that she would be entitled to compensation for her community property interest in the residence if a forced sale occurred. She contends only that she has a homestead interest in the residence that has value to her separate and apart from the market value of the residence, regardless of whether the residence is Mr. Kim's separate property or the couple's community property. She maintains that a taking in violation of the Due Process clause of the Fifth Amendment of the United States Constitution would occur if the residence were sold and she is not compensated for the loss of her homestead rights in that real property.

---

[42] *See* TEX. FAM. CODE ANN. § 3.202 (West 2006).

[43] 11 U.S.C. § 541(a) provides:

> The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1)    Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
>
> (2)    All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—
>
> (A)    under the sole, equal, or joint management and control of the debtor; . . .

13

No. 10-10882

We note at the outset that this constitutional argument is likely limited to cases, like this one, in which the real property that constituted the homestead was acquired before the BAPCPA was enacted. The Supreme Court has indicated that when a federal statute permits a person's property to become liable for the debts of another, a Takings Clause objection could not be successfully interposed if the property interest "came into being after enactment of the provision."[44] The Kims' residence was purchased before BAPCPA was passed.

Mrs. Kim has a state-law homestead interest in her residence. We have recognized that "in the absence of controlling federal bankruptcy law, the substantive nature of the property rights held by a bankrupt and its creditors is defined by state law."[45] Dome argues, and the district court held, that based on the decision of our court in *In re Rogers*,[46] Mrs. Kim's homestead rights are not a vested economic interest in the residence, and therefore, she is not entitled to compensation in the event of a forced sale.[47] Dome and the district court misunderstand the holding in *Rogers*.

In *Rogers*, the debtor inherited property before she married,[48] and this property retained its separate property characteristics under Texas law after she

---

[44] *United States v. Rodgers*, 461 U.S. 677, 697 n.24 (1983) (explaining that "[i]f there were any Takings Clause objection to § 7403, such an objection could not be invoked on behalf of property interests that came into being after enactment of the provision.") (citing *United States v. Security Industrial Bank*, 459 U.S. 70, 81 (1982)).

[45] *Haber Oil Co. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 435 (5th Cir. 1994) (citations omitted).

[46] 513 F.3d 212 (5th Cir. 2008).

[47] *Kim v. Kim (In re Kim)*, No. 3:09-cv-01082-N, slip op. at 11 (N.D. Tex. Aug. 11, 2010).

[48] *Rogers*, 513 F.3d at 216.

14

No. 10-10882

divorced.[49] She designated this separate property as her homestead after her divorce, but this designation was made within 1,215 before she filed for bankruptcy.[50] The question was whether a $146,450 cap[51] on state-law homestead exemptions under 11 U.S.C. § 522(p)(1) applied.[52] We held in *Rogers* that "a homestead interest established within the statutory period [1,215 days preceding the filing of bankruptcy], *without more*, does not fall within the purview of § 522(p)(1)."[53] The limiting language that we used in *Rogers*, i.e. "without more," was critical to our decision. The *real property* that later became impressed with homestead rights had been acquired by the debtor long before the 1,215-day period. The only interest that came into being within the 1,215-day window was the homestead interest, standing alone. We held that "the debtor must acquire vested economic interests *in the homestead property* during the 1,215-day period."[54] We explained that Congress intended for the term "interest" to mean a vested economic interest in property acquired within the statutory period,[55] "not a homestead interest" standing alone.[56] Had the debtor acquired the real property within the 1,215-day period and designated it as her homestead within that period, there is no question that the cap in §522(p)(1) would have applied. Our reasoning in *Rogers* that a homestead right, standing

---

[49] *Id.*

[50] *Id.*

[51] 75 Fed. Reg. 8747-01 (Feb. 25, 2010) (raising the amount of the cap from $136,875 to $146,450.

[52] *Rogers*, 513 F.3d at 215.

[53] *Id.* at 224 (emphasis added).

[54] *Id.* (emphasis in original).

[55] *Id.* at 225-26.

[56] *Id.* at 226.

alone, is not a vested economic interest in property, cannot be expanded to mean that an interest in real property that was acquired within the statutory window before the filing of bankruptcy proceedings in not an "interest" within the meaning of § 541 and § 522(p) if it is impressed with homestead rights.

If our decision in *Rogers* stood for the proposition that *all* homestead interests, even those in real property acquired during the statutory 1,215-day window, are not "interests" within the meaning of § 522(p) or § 541(a), then a *debtor's* homestead "interest" in real property acquired within the 1,215-day window would never become part of the bankruptcy estate even though both the real property and the homestead rights in that real property were acquired within the 1,215-day period. This is an unreasonable construction of the Bankruptcy Code. Congress did not intend for "interest," as used in § 522(p) and § 541(a), to exclude real property acquired within the statutory window that is impressed with homestead rights. It is beyond doubt that the intent and purpose of the BAPCPA was to limit the dollar amount of homestead exemptions. The words Congress chose to express this intent in § 522(p) and § 541(a) are plain and unambiguous. The words "interest" as used in these sections include a debtor's interest in real property that was acquired within the statutory window, even if that real property is a homestead.[57] Our decision in *In re Rogers* was narrow and is limited to the facts of that case, which were that the real property had been owned by the debtor many years before the bankruptcy court filing and the statutory 1,215-day period.[58]

---

[57] We express no opinion as to whether a debtor could validly claim that, as to real property acquired before the enactment of the BAPCPA, there has been an unconstitutional partial taking of homestead rights to the extent that the real property had a value in excess of the cap in § 522(p).

[58] *Rogers*, 513 F.3d at 216.

No. 10-10882

The Supreme Court of Texas' decision in *Heggen v. Pemelton*,[59] cited in our decision *Rogers*, and relied upon by Dome, does not support the proposition that the loss of a homestead right is inconsequential because such a right is not a "vested economic right."[60]   The *Heggen* opinion's rationale vindicated, rather than extinguished, homestead rights.   In a divorce decree, the trial court in *Heggen* had imposed a lien on a woman's separate property to secure an award of $150,000 to her former husband.[61]   The Texas Supreme Court reversed for two reasons.[62]   It first held that in ensuring "a just and right division" of the marital estate, courts may not impose a lien on the separate property of one spouse unless it is "to secure the other spouse's right of reimbursement for community improvements to that [separate] property."[63]   The second basis for the court's reversal was that the trial court had "imposed a lien on Ms. Heggen's homestead that, based on the record, did not fit into any of the categories allowed by the Texas Constitution; that is, it was not a tax lien, it was not a purchase money lien, nor was it an improvement lien for which the 'work and material [had been] contracted for in writing, with the consent of both spouses.'"[64]

During the course of discussing the bases for its holdings, the Texas court said in *Heggen*:

> Finally, the court of appeals erred in its constitutional analysis of the trial court's judgment by confusing the "right of reimbursement" with the "homestead interest." This confusion probably was engendered by the trial court's problematic judgment

---

[59] 836 S.W.2d 145 (Tex. 1992).

[60] *Heggen*, 836 S.W.2d at 148.

[61] *Id.* at 146.

[62] *Id.* at 148.

[63] *Id.* at 146.

[64] *Id.* at 148 (alteration in original) (quoting TEX. CONST. art. XVI, § 50).

17

which transferred Mr. Pemelton's reimbursement right in one breath and then awarded him an amount equal to that right in the next. The right of reimbursement is an economic interest possessed by a spouse who has contributed to the improvement of property awarded to the other spouse. The homestead interest is a legal interest created by the constitution that provides prophylactic protection from all but the three types of constitutionally permitted liens against homesteads. This interest, unlike the right of reimbursement, gives protective legal security rather than vested economic rights.[65]

This paragraph addressed the trial court's award of $301,500 to the wife, which represented the value of community funds, time, toil and talent that had been used to enhance the wife's separate property, and the trial court's award to the husband of approximately one half ($150,000) of this community reimbursement amount as "part of the division of community property between the parties and is given as [the husband's] interest in the homestead of the parties. . . ."[66]  The Texas Supreme Court's statement that a homestead right "gives protective legal security rather than vested economic rights"[67] cannot be read out of context to indicate that homestead rights have no value.  To the contrary, the *wife's* homestead rights in *Heggen* precluded a court from impressing upon her homestead a lien to enforce a *money judgment* representing the husband's vested economic right to reimbursement.  The Supreme Court of Texas emphasized that "[p]ermitting [the husband] to enforce his judgment lien could lead to the foreclosure of [the wife's] homestead, a result contrary to the protections plainly afforded homesteads by our [Texas] constitution."[68]

---

[65] *Id.*

[66] *Id.* at 146 n.1.

[67] *Id.* at 148.

[68] *Id.*

No. 10-10882

Four years after *Heggen* was decided, the Supreme Court of Texas reiterated in *Benchmark Bank v. Crowder* that a "spouse has a *vested* estate in the land" that is "a separate homestead interest." The Supreme Court of Texas also held in that case that the spouse "must be compensated for the loss of the homestead estate"[69] when a federal tax law, 26 U.S.C. § 7403, permitted a lien holder to foreclose and required third parties to be compensated for their interests in the property.[70]

We note that a passage in our decision in *Rogers* arguably could be read to mean that unless a person has some interest in real property, there can be no homestead interest. We said in *Rogers* that "'it is a well-recognized principle of law that one's homestead right in property can never rise any higher than the right, title, or interest that he owns in the property attempted to be *impressed* with a homestead right.'"[71] This statement must be considered in context. A spouse's homestead rights in the separate property of the other spouse was not under consideration in *Rogers*. Under Texas law, a spouse has a homestead interest in the other spouse's separate property even after the spouse who owns full fee simple title to the property dies.[72] The surviving spouse is entitled to live

---

[69] 919 S.W.2d 657, 662 (Tex. 1996) (citing *United States v. Rodgers*, 461 U.S. 677, 680 (1983)).

[70] *See Rodgers*, 461 U.S. at 680 (holding that 26 U.S.C. § 7403 requires "complete compensation for the loss of the homestead estate" to a spouse "as part of the distribution of proceeds required under § 7403"); *id.* at 693-94 (reading § 7403 "to contemplate, not merely the sale of the delinquent taxpayer's own interest, but . . . the recognition of third-party interests through the mechanism of judicial valuation and distribution").

[71] *In re Rogers*, 513 F.3d 212, 225 (5th Cir. 2008) (emphasis in original) (quoting *Perry v. Dearing (In re Perry)*, 345 F.3d 303, 314-15 (5th Cir. 2003)).

[72] *See United States v. Rodgers*, 461 U.S. 677, 685 (1983) (recognizing that "the rights accorded by the homestead laws vest independently in each spouse regardless of whether one spouse, or both, actually owns the fee interest in the homestead"); *Lucas v. Lucas*, 143 S.W. 1153, 1155-56 (Tex. 1912) (stating that "the surviving wife is as fully protected in the use and occupancy of a homestead on the separate property of her deceased husband as she would be on property that belonged to their community estate").

19

on what was the deceased spouse's separate property so long as its homestead character is maintained by the surviving spouse.[73]   The possession of the homestead at the time of the other spouse's death is a sufficient interest to allow the surviving spouse to remain in possession of the homestead property for the remainder of her life, if she so chooses (and subject to certain exceptions and possible events not relevant here), even though legal title is held by other surviving heirs.[74]   Even if the Kims' residence is Mr. Kim's separate property, Mrs. Kim has homestead rights in that property.

Homestead rights have *some* value *to a spouse*, separate and apart from an ownership interest in the real property on which homestead rights are impressed.   The Supreme Court of Texas has described homestead rights as "analogous to a life tenancy, with the holder of the homestead right possessing the rights similar to those of a life tenant for so long as the property retains its homestead character."[75]   As already discussed above, that court has also said

---

[73]  See TEX. CONST. art. XVI, § 52, which provides:

Section 52 - DESCENT AND DISTRIBUTION OF HOMESTEAD; RESTRICTIONS ON PARTITION
 On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having the jurisdiction, to use and occupy the same.

[74]  TEX. CONST. art. XVI, § 52; *cf. Laster v. First Huntsville Properties Co.*, 826 S.W.2d 125, 130 (Tex. 1991) (observing that the "homestead protection . . . can arise only in the person or family who has a present possessory interest in the subject property"); *see generally In re Perry*, 345 F.3d at 314 (5th Cir. 2003) (explaining that "[u]nder Texas law . . . a claimant need not hold the property in fee simple in order to invoke homestead protection" and that there can be a homestead in "the possessory estate of a tenancy at will [that] protects [a debtor's] possessory interest in the 26-acre tract against all creditors—except the owner, or one with better title").

[75]  *Laster*, 826 S.W.2d at 129.

No. 10-10882

that "[t]he homestead interest . . . gives protective legal security rather than vested economic rights."[76]    The parties have not cited a Texas decision that directly pertains to the calculation of the economic value of a spouse's homestead rights when that spouse has only a possessory interest in the real property by virtue of its homestead character.

The Kims rely upon the United States Supreme Court's hypothetical calculations of the value of Texas homestead rights in the *Rodgers* decision.[77] But the Court *assumed* "*only for the sake of illustration*, that a homestead estate is the exact economic equivalent of a life estate."[78]  The Kims have provided no authority that Texas law would value homestead rights as "the exact economic equivalent of a life estate,"[79] and the Supreme Court of Texas has said that the "the homestead estate is not identical to a life estate because one's homestead rights can be lost through abandonment."[80]

From our examination of Texas law, it is not entirely clear that Texas courts would place exactly the same economic value on homestead rights as it would on a life estate.  One significant difference between the economic value of a life estate and homestead rights is that the former can be alienated[81] while the latter cannot.  When a spouse no longer possesses the real property that was

---

[76] *Heggen v. Pemelton*, 836 S.W.2d 145, 148 (Tex. 1992).

[77] *United States v. Rodgers*, 461 U.S. 677, 698-99 (1983).

[78] *Id.* at 698 (emphasis in original).

[79] *Id.*

[80] *Laster*, 826 S.W.2d at 129 (Tex. 1991).

[81] *See Murphy v. Slaton*, 273 S.W.2d 588, 596 (Tex. 1954) ("A life tenant is entitled to . . . power to dispose of the whole of [the property] or of so much of the principal as his necessities may require or his judgment dictate, where a will gives a life estate for the use and benefit of the life tenant . . ."); *see also* TEX. PROP. CODE ANN. § 5.009 (West 2003) (specifying rules with respect to the fiduciary duties of a life tenant of a life estate who is given the power to sell and reinvest life tenancy property).

21

impressed with homestead rights, the homestead rights in that property cease to exist.[82] A spouse cannot transfer her homestead rights and receive value in exchange. This is not true of a life estate. The assumptions used only for illustrative purposes in *Rodgers* would seem to overvalue homestead rights under Texas law.

However, the Supreme Court of Texas has held that when homestead property on which a surviving spouse lives is condemned and taken for the construction of streets, the spouse is entitled to have all of the proceeds from the forced sale reinvested in another homestead property.[83] In *Lucas* the Texas court rejected the contention of a deceased husband's heirs that the proceeds, totaling $1,800, should be partitioned so that the complaining heirs would receive the value of their respective interests in one-half of the community property that they had inherited.[84] The court directed that all of the proceeds from the forced sale were to be reinvested in another homestead, which would be owned one-half by the widow (representing her community one-half) and one-half by her husband's heirs, but which would be "subject to the homestead use in the widow during her life or for such period as she may elect to use same as a homestead."[85]

---

[82] *See Gonzales v. Gonzales*, 273 S.W. 798, 798 (Tex. 1925) (indicating that the continued homestead rights of a spouse following the death of the owner of the homestead property are contingent upon the spouse's use and possession of the property for homestead purposes); *Laster*, 826 S.W.2d at 129 ("This homestead protection, however, can arise only in the person or family who has a present possessory interest in the subject property."); *see also Moorhouse v. Crew*, 273 S.W.2d 654, 655-56 (Tex. Civ. App.—San Antonio 1954,writ ref'd) (holding that spouse's homestead interest was not abandoned because right to possession continued).

[83] *See Lucas v. Lucas*, 143 S.W. 1153, 1156 (Tex. 1912).

[84] *Id.*

[85] *Id.*

No. 10-10882

It could be argued that a forced sale of property in bankruptcy is more akin to a regulatory taking and that for purposes of determining "just compensation" under the Fifth Amendment,[86] the value of the right to continue to live in a home having a market value of $1,000,000 as compared to the right to continue to live in a home having a market value of $136,875, should not be determined solely on the market value of the real property. The Kims have offered no insight into this question either as a general proposition or when tailored to Mrs. Kim's own specific circumstances. Mrs. Kim is not seeking any part of the market value of her residence. As already noted, if she had a life estate in the residence, she would be entitled to sell that life estate for its market value, which might well be calculated using assumptions based on her age and the discount rate. But she cannot sell her homestead rights in the residence. Whether the residence has a market value of $1,000,000 or $136,875, the value of the right to live in the residence is intrinsic to Mrs. Kim, though Texas authorities indicate that even a "life estate could not [be] worth more than the land itself."[87] It may be more comfortable and enjoyable to reside in a residence that has a market value of $1,000,000 than to reside in a residence worth $136,875, but the Kims have not provided any argument that addresses these issues. Nor is there any evidence that the Kims' residence produces income, such as a rural or business homestead might, which could affect the value of homestead rights.

The Kims simply assert that if their residence is sold, a taking of Mrs. Kim's homestead rights in violation of the Due Process clause of the Fifth Amendment will occur unless she is compensated in accordance with the hypothetical in *Rodgers*. Mrs. Kim devotes one and one-half pages of her brief

---

[86] U.S. CONST. amend. V.

[87] *Clemons v. Clemons*, 45 S.W. 996, 998 (Tex. 1898).

23

to the takings issue. Mr. Kim's briefing is equally succinct, though he asserts that Mrs. Kim's homestead interest is worth more than 50% of the value of their residence, citing the methodology applied in the *Rodgers* hypothetical. Neither of the Kims considers the basis for Congress's decision to allow a maximum homestead exemption of $136,875 for a spouse who is a debtor in bankruptcy, or $273,750 when both spouses are debtors in bankruptcy.[88] Neither argues that the determination by Congress to permit an exemption of $136,875 for a debtor such as Mr. Kim would not be just compensation for Mrs. Kim's homestead interest since $136,875 in proceeds would be impressed with her homestead rights.[89] The Kims have not adequately briefed their claim that a taking would occur unless Mrs. Kim is compensated more than the $136,875 exemption.

We also note that the Kims have failed to address the applicability of 11 U.S.C. § 363(j), which provides:

> After a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such spouse or co-owners, and of the estate.[90]

We express no opinion as to whether Mrs. Kim might be entitled to compensation under this section of the Bankruptcy Code.

---

[88] 11 U.S.C. § 522(m); *Davis v. Davis (In re Davis)*, 170 F.3d 475, 478 (5th Cir. 1999) ("Both husband and wife may claim exemptions individually.").

[89] TEX. PROP. CODE ANN. § 41.001(c); *Zibman v. Tow (In re Zibman)*, 268 F.3d 298, 305 (5th Cir. 2001); *Laster v. First Huntsville Properties Co.*, 826 S.W.2d 125, 132 (Tex. 1991) (noting that "[a]fter the partition sale, [a wife's] homestead right carries over to her portion of the proceeds of sale. [She] may seek continued homestead protection for the proceeds of the partition sale as she could for the proceeds of any other type of sale of her homestead interest. [She] has not been divested of her homestead rights.").

[90] *See* 11 U.S.C. § 363(j).

No. 10-10882

\*    \*    \*

For the foregoing reasons, the district court's judgment is AFFIRMED.