**REVISED October 13, 2014**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-40108

In the Matter of:  STANLEY THAW,

      Debtor

------------------------------

KERNELL THAW,

      Appellant

v.

CHRISTOPHER MOSER,

      Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

October 9, 2014

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Eastern District of Texas

Before KING, GRAVES, and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:

Kernell Thaw ("Kernell"), the non-debtor spouse of Stanley Thaw ("Stanley"), claims a homestead exemption in property held jointly with Stanley that is subject to a forced sale in Stanley's bankruptcy proceedings. She contends that the sale is a taking under the Fifth Amendment to the

No. 14-40108

United States Constitution entitling her to just compensation. Because any potential property interest was acquired after the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), there is no taking and we AFFIRM the lower courts.

## FACTS AND PROCEEDINGS[1]

This appeal arises out of Dr. Stanley Thaw's bankruptcy. Stanley married his wife, Kernell Thaw, in 2001. In 2002, Stanley partnered with Dr. Leslie Schachar to form a medical service company, Theramedics, Inc. ("Theramedics"), and in 2004 and 2006 Theramedics defaulted on some of its obligations. Theramedics dissolved soon after its defaults. Schachar personally paid off some of Theramedics's debts, and Schachar obtained assignments of Stanley's guarantees to pay off the debts. When Schachar demanded that Stanley pay off his portion, Stanley refused. Schachar sued Stanley and received a judgment against Stanley in November 2009.

On October 28, 2009, Stanley and Kernell purchased a home for $1,750,000. On November 1, 2009, Stanley and Kernell executed a Contract for Deed increasing the price to $2,150,000. In the following months, Stanley and Kernell made monthly payments on their home that were more than twice the contractually required amount. On June 27, 2011, Stanley and Kernell closed on the purchase of the home.

On December 2, 2011, Stanley filed for Chapter 7 bankruptcy protection and claimed that the home was exempt from the bankruptcy estate under 11 U.S.C. § 522(b). The Chapter 7 trustee objected to Stanley's exemption and filed an adversary proceeding against Stanley and Kernell. Stanley subsequently conceded that his exemption was capped at $146,450 under 11

---

[1] Unless otherwise noted, the facts are taken from the bankruptcy court memorandum opinion. Neither party challenges any of the bankruptcy court's factual findings; indeed in his brief, the trustee adopts verbatim Kernell's statement of the facts.

No. 14-40108

U.S.C. § 522(p). Following a hearing, the bankruptcy court held that Stanley's homestead exemption should be further reduced to $0 pursuant to 11 U.S.C. § 522(o) because Stanley acted with intent to hinder, delay, and defraud his creditors by "concoct[ing] an elaborate scheme to funnel non-exempt assets into his exempt homestead in a way that would be difficult for creditors such as Schacher [sic] to detect or trace."

In the bankruptcy court proceeding, Kernell argued that she had a separate, vested homestead property right that was not subject to the limits of 11 U.S.C. §§ 522(o) and (p). The bankruptcy court held that Kernell, as a non-debtor, had no "separate and distinct exempt homestead interest in the home . . . that would allow her to claim a homestead exemption or entitle her to compensation or prevent the sale of the homestead by the trustee except as set forth in the Bankruptcy Code." Therefore, Kernell's takings claim failed. Kernell appealed to the district court and the district court affirmed. The district court reasoned that Kernell had no vested property interest in the homestead exemption, and therefore there was no unconstitutional taking. Kernell appeals the district court's order.

## STANDARD OF REVIEW

"This court reviews the decision of a district court, sitting as an appellate court, by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *In re Whitley*, 737 F.3d 980, 985 (5th Cir. 2013) (internal citation omitted). The bankruptcy court's findings of fact are reviewed under the clearly erroneous standard, and questions of law are reviewed de novo. *Id.* The facts are undisputed and this case presents only questions of law: whether the trustee can force a sale of the Thaws' homestead, and if so, whether the sale constitutes a taking of Kernell's homestead interest requiring compensation.

3

No. 14-40108

## DISCUSSION

### I.    The Bankruptcy Court's Authority to Order a Forced Sale

Kernell has no valid objection to the property's forced sale as ordered by the bankruptcy court.  Section 363 of the Bankruptcy Code sets forth a procedure by which a trustee may sell property of the estate other than in the ordinary course of business.  11 U.S.C. § 363.  This authorization is not limited to the situation where the debtor is the only party with an interest in the property to be sold.  *See In re Kim*, 748 F.3d 647, 654-55 (5th Cir. 2014) ("The Bankruptcy Code . . . contains express authorization to sell property of the bankruptcy estate, notwithstanding the fact that a third party may have an interest in that property.") (citing 11 U.S.C. § 363).  *In re Kim* upheld a forced sale under circumstances that are nearly identical to the facts of this case: where a non-debtor spouse claimed a homestead interest in the property.  *Id.* at 655 (holding that a non-debtor's homestead rights do not disturb the "bankruptcy court's authority to order a forced sale of the [debtor and non-debtor spouse's] residence").  There, this court expounded the "unremarkable proposition that a right of sale under federal law may be enforced as against a non-debtor spouse, in spite of the non-debtor spouse's homestead rights."  *Id.* at 656.  At oral argument, Kernell's counsel conceded the bankruptcy court's authority to order a forced sale of the property but maintained that such a sale would constitute a taking under the Fifth Amendment for which Kernell is entitled to compensation.

### II.   Kernell Thaw's Taking Claim

Kernell challenges the bankruptcy court's decision—and the district court's affirmance—that her homestead interest is not a vested property right and therefore there was not a Fifth Amendment taking from a forced sale of the property.  The trustee contends that the lower courts were correct and that, since her homestead interest is not a vested economic right, the Takings Clause

does not entitle her to compensation for the sale of the property. In deciding this case, neither the district court nor the bankruptcy court had the benefit of this court's reasoning in *In re Kim*, which issued after the lower courts ruled. Both parties find support for their arguments in *In re Kim*. In support of Kernell's argument, *In re Kim* clarified that a homestead interest may constitute a vested property right, and that a non-debtor spouse could be entitled to compensation from the sale of a property to which a homestead right attaches. *Id.* at 661 ("Homestead rights have *some value to a spouse*, separate and apart from an ownership interest in the real property on which homestead rights are impressed.") (emphasis in original). However, the *In re Kim* court placed an important limitation on its holding, one which crucially distinguishes this case and lends support to the trustee. It noted that:

> [T]his constitutional argument *is likely limited to cases, like this one, in which the real property that constituted the homestead was acquired before the BAPCPA was enacted.* The Supreme Court has indicated that when a federal statute permits a person's property to become liable for the debts of another, a Takings Clause objection could not be successfully interposed if the property interest "came into being after enactment of the provision." The Kims' residence was purchased before BAPCPA was passed.

*Id.*, 748 F.3d at 657 (emphasis added) (quoting *United States v. Rodgers*, 461 U.S. 677, 697 n.24 (1983)). Unlike in *In re Kim*, it is undisputed that the Thaws purchased their property *after* BAPCPA was enacted in 2005.[2] This distinction is dispositive and Kernell may not press a Takings Clause claim under *Rodgers* and *In re Kim*.

---

[2] BAPCPA added the Bankruptcy Code provisions—11 U.S.C. §§ 522(o) and (p)—that cap and eliminate the homestead interest. Pub.L. No. 109–8, §§ 308, 322, 119 Stat. 23, 81-82, 96–97 (2005).

No. 14-40108

**A.**

In *Rodgers*, the Supreme Court analyzed whether § 7403 of the Tax Code "empowers a federal district court to order the sale of a family home in which a delinquent taxpayer had an interest at the time he incurred his indebtedness, but in which the taxpayer's spouse, who does not owe any of that indebtedness, also has a separate 'homestead' right as defined by Texas law." *Rodgers*, 461 U.S. at 680. In analyzing this problem, the Court noted that "[i]f there were any Takings Clause objection to § 7403, such an objection could not be invoked on behalf of property interests that came into being after enactment of the provision. In both cases here, the homestead estates at issue came into being long after 1868." *Id.* at 697 n.24 (internal citations omitted). Although *Rodgers* addressed the Tax Code and this case addresses the Bankruptcy Code, the general constitutional rule is applicable to the same Texas homestead right. Kernell does not explain, and we can think of no reason, why we should limit to the Tax Code the *Rodgers* rule limiting the takings implications of a forced sale to property interests that were acquired before the regulation went into effect.

*Rodgers* relied on *United States v. Security Industrial Bank*, 459 U.S. 70, 81–82 (1982), which interpreted a provision of the Bankruptcy Code to be prospective only. In *Security Industrial Bank*, the Court reasoned, in part, "we decline to construe the Act in a manner that could in turn call upon the Court to resolve difficult and sensitive questions arising out of the guarantees of the takings clause," *id.* (internal quotation marks omitted), thereby implying that prospective application of a bankruptcy rule would avoid a takings problem. *See also In re Thompson*, 867 F.2d 416, 422 (7th Cir. 1989) ("The conclusion that section 522(f), when as here it is applied prospectively, does not violate the takings clause of the Fifth Amendment is the premise of *Security Industrial Bank*, which construed the statute to be applicable only prospectively in order

6

No. 14-40108

to obviate a constitutional question."); *In re Bernier*, 176 B.R. 976, 992 (Bankr. D. Conn. 1995) (noting that in *Security Industrial Bank*, the Court "assum[ed] that there was no unconstitutional taking effected by § 522(f) as to liens created after the effective date of the statute"). Accordingly, *In re Kim*'s endorsement of the *Rodgers* footnote is supported by substantial authority and applies in this case.

## B.

While Kernell does not argue that the *Rodgers* rule should not apply in the bankruptcy area, she contends that *Rodgers* does not extend so far as to permit an existing statutory regime that provides for the "gratuitous confiscation" of property. *Rodgers*, 461 U.S. at 697 ("Admittedly, if § 7403 allowed for the gratuitous confiscation of one's property interests in order to satisfy another person's tax indebtedness, such a provision might pose significant difficulties under the Due Process Clause of the Fifth Amendment."). First, *Rodgers* said only that a gratuitous confiscation *might* pose a Takings Clause problem, not that it would always constitute a taking. Second, Kernell does not argue how a forced sale in this case would be a "gratuitous confiscation." She presents a hypothetical in which a property in which a delinquent taxpayer has a one percent interest is seized in order to pay that taxpayer's liability. Kernell avers that this "seizure" of the other 99-percent owner's interest would clearly be an unconstitutional taking even if the property was purchased after the enactment of the statute authorizing such a sale. We disagree. In *Rodgers*, there was no takings problem because the relevant Tax Code provision provided for compensation "by requiring that the court distribute the proceeds of the sale according to the findings of the court in respect to the interests of the parties and of the United States." *Id.* at 697 (internal quotation marks and citations omitted). These provisions would similarly operate in Kernell's hypothetical to afford the non-delinquent owner

7

compensation for the seizure.   Similarly, here, the Bankruptcy Code is designed to minimize takings concerns.  Section 363, the provision under which the property is to be sold, contains protection for non-debtor spouses.  Like the Tax Code provision that the *Rodgers* court found militated against a "gratuitous confiscation," Section 363(j) directs the trustee to apportion and distribute the proceeds of the sale to the non-debtor spouse and to the estate. 11 U.S.C. § 363(j).  In addition, Section 363(i) gives non-debtor spouses a right of first refusal to purchase the property.  11 U.S.C. § 363(i).  These safeguards show that a forced sale here will not be a gratuitous confiscation.

Kernell also contends that the fact that BAPCPA existed at the time the Thaws acquired the property should be just one factor in determining whether a taking has occurred.  According to Kernell, *Palazzolo v. Rhode Island*, 533 U.S. 606, 626 (2001), retreated from the rule announced in *Rodgers*.  In *Palazzolo*, the Court rejected the argument that "by prospective legislation the State can shape and define property rights and reasonable investment-backed expectations, and subsequent owners cannot claim any injury from lost value," and cautioned that "[w]ere we to accept [an absolute rule], the postenactment transfer of title would absolve the State of its obligation to defend any action restricting land use, no matter how extreme or unreasonable."  *Id.* at 627.  The Court recognized that "[t]he Takings Clause . . . in certain circumstances allows a landowner to assert that a particular exercise of the State's regulatory power is so unreasonable or onerous as to compel compensation."  *Id*.

*Palazzolo*'s narrow exception has no application here.  Kernell does not connect the "certain circumstances" identified in *Palazzolo* to the Bankruptcy Code provisions at issue here.  She does not argue that the sale of her interest in the property is "so unreasonable or onerous as to compel compensation," *id.*, so the trustee's actions do not fall within any limit imposed by *Palazzolo.*  Just as the Bankruptcy Code protects a non-debtor from gratuitous confiscation, it

makes the sale of the property not "so unreasonable or onerous as to compel compensation." Moreover, the forced sale will not disturb Kernell's investment-backed expectations. *See Palazzolo*, 533 U.S. at 617 (considering, in determining whether a taking occurred, "the extent to which the regulation interferes with reasonable investment-backed expectations"). Since BAPCPA was in effect before the Thaws purchased the property, and because the Thaws purchased the property after they had knowledge of the judgment against Stanley, Kernell was on constructive notice of how the Bankruptcy Code would operate in the event of Stanley's bankruptcy. In sum, the sale of the property is neither a "gratuitous confiscation" nor "so unreasonable or onerous as to compel compensation."

## CONCLUSION

For the foregoing reasons, we hold that the forced sale of the property by operation of § 363 does not constitute a taking of Kernell Thaw's homestead interest. The Thaws acquired the property after the enactment of BAPCPA, there is no "gratuitous confiscation," and the sale is not "so unreasonable or onerous as to compel compensation." Accordingly, § 363 governs the distribution, if any, due to Kernell.[3] Since we have the benefit of considering *In re Kim*, our reasoning is different from the lower courts, but we may affirm on any ground supported by the record. *See Moncrief Oil Int'l. Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). The district court is AFFIRMED.

---

[3] We will not issue an advisory opinion on how Section 363 should apply to apportion any sale proceeds in this case.