

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00198-CV

THE ESTATE OF BARBARA A.
SLOAN, DECEASED

----------

FROM PROBATE COURT NO. 1 OF TARRANT COUNTY
TRIAL COURT NO. 2002-0000372-1-B

----------

## OPINION

----------

This appeal raises the question of whether a surviving spouse's constitutional homestead right in a decedent spouse's separate real property, allowing the surviving spouse to live at the property for the remainder of that spouse's life, affects the fair market value of the property. In two issues, appellant Shawn Wolfe, as the independent executor of the estate of Hollis Glenn Sloan (Wolfe), appeals the trial court's judgment awarding damages to appellee James D. Sanford, as co-trustee of the Barbara A. Sloan Family Trust, the Barbara A. Sloan GST Exempt Trust, and the Barbara A. Sloan Non-GST

Exempt Trust—Marital (Sanford). We hold that the surviving spouse's homestead right affected and reduced the property's fair market value, so we reverse the judgment of the trial court, which rests on the opposite conclusion.

**Background Facts**

The material facts in this appeal are undisputed. Hollis and Barbara Sloan were married from 1972 until 2001, when Barbara died. Before her death, they lived at a house on Winton Terrace West in Fort Worth (the Winton Terrace Property). The property was their homestead. Barbara acquired the property through a warranty deed in 1999. The warranty deed recited that the property was Barbara's "sole and separate property." To help purchase the property, Barbara took out a $50,000 loan. Hollis signed a deed of trust to help secure the $50,000 loan, and the loan was repaid with community funds.

Barbara's will appointed Hollis, who was sixty-eight years old at the time of her death, as the independent executor of her estate. It also authorized Hollis to "purchase any assets from [Barbara's] estate for their fair market value." The will created three trusts, appointed Hollis as the trusts' initial trustee, and made him a beneficiary of the trusts. Finally, the will bequeathed all of the real property Barbara owned, including the Winton Terrace Property, to the trusts that the will created.

After Barbara's death, Hollis continued to live at the Winton Terrace Property, and he claimed the property as his homestead. In the course of the administration of Barbara's estate, Hollis filed an inventory in which he assigned

2

values to property she owned. On that inventory and on a tax return for Barbara's estate, Hollis listed several tracts of real property that Barbara had owned as rentals and also listed the Winton Terrace Property, for which Hollis valued the estate's interest at $222,000. In December 2003, Hollis conveyed his interest in several rental properties to Barbara's estate in exchange for the estate's interest in the Winton Terrace Property. The total consideration paid by Hollis for the estate's interest in the Winton Terrace Property was $222,000 worth of rental properties.[1]

Hollis died in 2007. His will named Wolfe as his estate's independent executor.[2] Wolfe and Sanford are siblings and co-trustees of the trusts created by Barbara's will. In July 2009, Sanford sued Wolfe individually and in her capacity as the independent executor of Hollis's estate. In his original petition, Sanford alleged that Hollis had violated a fiduciary duty when he had sold the Winton Terrace Property from himself as the executor of Barbara's estate to

---

[1]In the trial court, Sanford pled,

Hollis and Barbara Sloan owned numerous rental properties. There are currently approximately 180 combined residential rental properties owned collectively by the Estate of Hollis Glenn Sloan and the Barbara Sloan Trusts. Some of these properties were the separate property of Hollis Sloan and are owned by the Estate of Hollis Sloan or by Shawn Wolfe as the sole beneficiary and distributee of the Estate, some were the separate property of Barbara A. Sloan, and some were community property . . . .

[2]According to Sanford's pleading, Wolfe, individually, is the sole beneficiary of Hollis's will. Hollis's will is not in the record.

3

himself individually without paying fair market value and without acting in good faith. Sanford recognized that Barbara's will gave Hollis authority to buy the Winton Terrace Property for fair market value, but Sanford contended that when Hollis had bought the property, he had incorrectly characterized it as community property and had therefore paid an amount equaling half of the property's fair market value. Sanford asserted that because of Hollis's "improper handling of the transaction, [Barbara's] Trusts did not receive adequate value for the sale of the Property" and lost out on rental income that the property could have generated. As relief, Sanford asked for damages "sufficient to compensate the Trusts for the mishandling of the transaction by Hollis." He also sought declarations that the Winton Terrace Property was Barbara's separate property and that Hollis's purchase of it was not conducted in accordance with Barbara's will.

Wolfe filed an answer in which she contended that Hollis had a homestead interest in the Winton Terrace Property and that the compensation that he paid for the property was adequate. Wolfe also alleged that to the extent that Hollis's and Barbara's community funds were used to repay Barbara's $50,000 loan obligation on the property, Hollis's estate was entitled to reimbursement, which could affect whether he paid fair market value for the property.

Wolfe and Sanford each sought summary judgment. In her motion, Wolfe contended that the Winton Terrace Property was community property at the time of Barbara's death. She also contended that even if the property was Barbara's

4

separate property, Hollis's homestead right in the property for the remainder of his life decreased the value of Barbara's estate's interest and made Hollis's $222,000 payment for the property adequate.[3]  Specifically, she argued,

> It cannot be seriously doubted that [Hollis's] right to live in the house for the rest of his life decrease[d] the value anyone would otherwise be willing to pay for Barbara Sloan's Estate's interest in Winton Terrace.  The next obvious question is how [to] value the diminution . . . of Barbara's Estate's interest in Winton Terrace caused by [Hollis's] homestead right. . . .  [T]he proper way to value an interest in property subject to a homestead is to use the IRS Life Tables.  Those tables establish the different values for the life tenant and the remainderman depending on the age of the life tenant.  For a man of [Hollis's] age in 2003, the value of his life estate was 47.346% of the total value while the estate's remainder interest was 52.654% of the total.

In Sanford's motion, he contended that while Barbara's will gave Hollis the right to purchase property from her estate for fair market value, he purchased the Winton Terrace Property for substantially less than fair market value because he incorrectly characterized it as community property and therefore incorrectly lowered the value of Barbara's interest from $444,000 to $222,000.  Sanford

---

[3]To her motion for summary judgment, Wolfe attached an affidavit from Emile Denke, a certified public accountant.  Denke opined in part,

> Because the property was [Hollis's] homestead, he had legal interest in the property.  As his homestead, [Hollis] had the right to live in Winton Terrace the rest of his life, regardless of who was the owner of the property.
>
> . . . In my opinion, there is no doubt that [Hollis's] homestead interest in Winton Terrace diminishe[d] the value of Barbara's interest.  Therefore, Barbara's interest must be valued at something less than $444,000.00.

5

argued that Hollis had breached a fiduciary duty in his purchase of the Winton Terrace Property.

The trial court initially decided to deny both parties' motions, stating that fact disputes precluded summary judgment. The parties then filed a joint submittal of facts and legal issues while agreeing that there were "no genuine issues of material fact and that the [trial court] should resolve the disputes between the parties purely as a matter of law." Concerning the legal issues presented, the parties stated,

> The initial legal issue for the Court to decide is whether the Property located at 2324 Winton Terrace West was the separate property of Barbara A. Sloan, as argued by Plaintiff, or whether it was the community property of Barbara and Hollis Sloan, as argued by Defendant. If the Court concludes that the Property was Barbara Sloan's community property, no further finding is necessary. *If the Court concludes that the Property was Barbara Sloan's separate property, then the Court must determine whether Hollis Sloan's homestead right decreased the value of the Estate's interest in the Winton Terrace property. If it did, then his estate does not owe anything to Plaintiff. If it did not, then Defendant owes Plaintiff $197,000.00.* [Emphasis added.]

In the joint submittal, the parties each summarized their arguments concerning the characterization of the Winton Terrace Property and the effect, if any, that Hollis's homestead interest in the property had on the fair market value that he was required to pay to the estate to purchase the property.

After reviewing the parties' joint submittal, in a letter ruling, the trial court made the following findings:

> 1. The March 26, 1999 Warranty Deed . . . to Barbara . . . conveying [the Winton Terrace Property] to her "as her sole and

6

separate property" created a rebuttable presumption that the property was Barbara's separate property . . . .

2. The failure of [Wolfe] to come forward with evidence to sufficiently rebut this separate property presumption conclusively establishes that such property was Barbara's separate property at her death. . . .

3. When [Hollis] purchased/exchanged the Winton Terrace property by Special Warranty Deed dated December 30, 2003 (and pursuant to the provision in Barbara's Will allowing such purchases for full market value), he valued such property for consideration in the purchase/exchange at $222,000, or exactly one-half of the returned valuation of Winton Terrace on the Inventory & Appraisement and Estate Tax Return Hollis filed for the Estate ($444,000).

4. The purchase of Winton Terrace for less than full market value constituted a violation of the privilege conferred on Hollis under Barbara's Will and, whether it happened intentionally or unintentionally, was a breach of the fiduciary duty owed by Hollis as Executor of Barbara's estate.

5. *The homestead right of Hollis in Winton Terrace had no effect on the "full market value" which Hollis was bound to ascribe to any property in Barbara's estate which he wished to* purchase. To give any value to such interest for purposes of determining purchase/exchange consideration would amount to sanctioning self-dealing by an executor.

. . . .

7. The proper measure of damages to Plaintiff is the amount by which the consideration for Winton Terrace was understated ($222,000.00) less the community reimbursement claim of $25,000 representing the interest of Hollis in the community funds used to pay the $50,000 loan which formed a part of the original consideration for the acquisition of Winton Terrace, or $197,000.00.[4] [Emphasis added.]

---

[4]Sanford did not appeal from and does not challenge the trial court's finding that Hollis's estate is entitled to $25,000 in reimbursement as half of the $50,000 in community funds used to repay Barbara's loan.

7

In accordance with these findings, the trial court signed a final money judgment against Wolfe and in Sanford's favor for $197,000. Wolfe brought this appeal.

## The Effect of Hollis's Homestead Right on Fair Market Value

In two related issues, Wolfe contends that the trial court erred by basing its final judgment on its ruling that Hollis's homestead right did not affect the fair market value of Barbara's estate's interest in the Winton Terrace Property. Sanford contends that the trial court correctly granted his motion for summary judgment because Hollis's homestead interest had no effect on the fair market value that Hollis was bound to ascribe to the property.

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). As we stated above, the parties agree that there are no genuine issues of material fact in this case; thus, we must determine whether the trial court made the correct legal ruling based on the undisputed facts. *See City of Blue Mound v. Sw. Water Co.*, 449 S.W.3d 678, 681 (Tex. App.—Fort Worth 2014, no pet.).

The question on which this appeal turns is whether Hollis's constitutional homestead right to live at the Winton Terrace Property for the rest of his life

8

reduced the property's fair market value and likewise reduced Hollis's required payment to buy the property from Barbara's estate at fair market value under the terms of her will.[5]  A property's fair market value is what a willing buyer would pay a willing seller, neither acting under any compulsion.[6]  *Phillips v. Carlton Energy Grp., LLC*, 475 S.W.3d 265, 278 (Tex. 2015).  This standard takes into consideration all of the uses to which the property "is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future."  *EXLP Leasing, LLC v. Ward Cty. Appraisal Dist.*, 476 S.W.3d 752, 763 (Tex. App.—El Paso 2015, pets. filed) (quoting *City of Austin v. Cannizzo*, 153 Tex. 324, 334, 267 S.W.2d 808, 815 (1954)).  "In the willing seller-willing buyer test of market value it is frequently said that *all factors should be considered* which would reasonably be given weight in negotiations between a seller and a buyer."  *City of Austin*, 153 Tex. at 332–33, 267 S.W.3d at 814 (emphasis added); *see also Caffe Ribs, Inc. v. State*, No. 14-0193, 2016 WL

---

[5]While Hollis bought the Winton Terrace Property with the belief that it was community property and while Wolfe argued in the trial court that the property was community property, Wolfe concedes on appeal that it was Barbara's separate property and recognizes that Hollis "mistakenly believ[ed]" that the property was community property.  Thus, we will not review the trial court's ruling that the property was separate property. Because we hold below that Hollis's homestead interest reduced the fair market value of Barbara's estate's interest in the property, we agree with Wolfe that "Hollis was right [about the property's fair market value] but for the wrong reason."

[6]As Wolfe argues in her brief, there is no suggestion or evidence that Barbara intended her will to mean anything other than the usual meaning of fair market value.

9

1267677, at *4–5 (Tex. Apr. 1, 2016) (holding that issues related to the state's condemnation of property affected the property's market value); *State v. Johnson*, 444 S.W.3d 62, 69 (Tex. App.—Dallas 2014, pet. denied) ("Lacking fire code compliance would significantly affect the market value of the Remainder because a potential buyer who learned that it was not in compliance with the fire code probably would not consider purchasing the Remainder."); *McDonald v. Dallas Cty.*, No. 05-98-01500-CV, 2001 WL 922972, at *2 (Tex. App.—Dallas Aug. 16, 2001, no pet.) (not designated for publication) (explaining that when the government condemned part of a landowner's property, evidence of removal of trees, erosion of a creek bank, pollution of a creek, alteration of rain water runoff and resultant flooding, and impairment of access to the remainder of the property affected market value).

Our state's constitution provides,

> On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having the jurisdiction, to use and occupy the same.

Tex. Const. art. XVI, § 52. Under this provision, a surviving spouse "may occupy the homestead[7] during the spouse's lifetime without it being partitioned to the heirs of the deceased spouse until the survivor's death. Because this probate homestead right belongs to a surviving spouse regardless of its community or separate property character, its characterization by the decedent is irrelevant." *Garner v. Long*, 49 S.W.3d 920, 922 (Tex. App.—Fort Worth 2001, pet. denied) (citations omitted); *see In re Estate of Sheshtawy*, 478 S.W.3d 82, 86 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("A surviving spouse retains the right to use and occupy the homestead so long as he or she elects to do so. This right continues as long as the surviving spouse uses or occupies the property, or until he or she abandons that right." (citations omitted)); *Majeski v. Estate of Majeski*, 163 S.W.3d 102, 107 (Tex. App.—Austin 2005, no pet.) ("When a spouse dies, the surviving spouse retains the full homestead rights that the couple enjoyed before the death of the spouse. Even if the property was the deceased spouse's separate property, the surviving spouse may continue to use and occupy the property as long as he does not abandon the homestead." (citations omitted)).

The surviving spouse's homestead right is an estate in land. *Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 129 (Tex. 1991). Thus, we disagree with Sanford's argument that "[a]t the time [Hollis] purchased [the Winton Terrace

---

[7]In the trial court, the parties stipulated that from "the time of its purchase until the time of Barbara Sloan's death, [the Winton Terrace Property] was the homestead of Hollis and Barbara Sloan."

Property], [he] did not own any portion of [it]." This estate is "analogous to a life tenancy, with the holder of the homestead right possessing the rights similar to those of a life tenant for so long as the property retains its homestead character." *Id.* The homestead right therefore "reduc[es]" underlying ownership rights "in a homestead property to something akin to remainder interests and vest[s] in each spouse an interest akin to an undivided life estate in the property." *Id.* (citing *United States v. Rodgers*, 461 U.S. 677, 686, 103 S. Ct. 2132, 2138 (1983)); *see also Sargeant v. Sargeant*, 118 Tex. 343, 352, 15 S.W.2d 589, 593 (1929) ("[I]t is clear to us that the homestead right in land contains every element of a life estate, and is therefore at least in the nature of a legal life estate, or, in other words, a life estate created by operation of law."); *Geldard v. Watson*, 214 S.W.3d 202, 208 (Tex. App.—Texarkana 2007, no pet.) (reiterating that the "homestead estate has the effect of reducing the underlying ownership rights"); *Morris v. Porter*, 393 S.W.2d 385, 388 (Tex. Civ. App.—Houston 1965, writ ref'd n.r.e.) ("[A surviving spouse's] homestead right is in the nature of, and equivalent to, a life estate.").

Thus, Barbara's death "created in [Hollis] rights in the residence analogous to those of a life tenant, and created in [Barbara's estate] a future interest in the residence similar to that held by a vested remainderman." *See Laster*, 826 S.W.2d at 129. The estate's vested interest could be conveyed or encumbered subject to Hollis's right of possession for his life. *Id.* at 130–32 (holding that a party holding a future interest subject to a present homestead right could

12

mortgage the interest and explaining that it has "long been the rule that the holder of a vested future interest in property can mortgage or alienate that interest"); *Johnson v. Prosper State Bank*, 125 S.W.2d 707, 710–11 (Tex. Civ. App.—Dallas 1939), *aff'd*, 134 Tex. 677, 138 S.W.2d 1117 (1940).

Wolfe argues on appeal,

> It is clear that no hypothetical buyer would pay $444,000 for Barbara's interest in [the Winton Terrace Property because] it was subject to Hollis's right to live in the property for the rest of his life. It is equally clear that Hollis was only required to pay for the interest in [the Winton Terrace Property] that he did not already own.
>
> . . . .
>
> The unencumbered value of [the Winton Terrace Property] was $444,000. Would a hypothetical buyer pay the same $440,000 for [the property] if the house came with Hollis living in [it] for the rest of his life? The answer is clearly no.

We agree that as a matter of both logic and law, Hollis's surviving homestead right, which entitled him to live in the property for the rest of his life and made the interest held by Barbara's estate akin to a vested remainder that would entitle a buyer to possession only upon Hollis's death, necessarily affected what such a buyer would pay a willing seller for the property and therefore reduced the property's market value. Over one hundred years ago, one of our sister courts reached a similar conclusion in *Meyers v. Riley*, 162 S.W. 955, 957 (Tex. Civ. App.—Austin 1914, no writ) (op. on reh'g). There, the court was concerned about how the character of one tract as a surviving spouse's homestead could lessen the value of the tract as compared with another tract

13

that was not encumbered by a homestead right. *Id.* The court offered the following hypothetical to illustrate how a homestead interest that attaches to property reduces the property's market value:

> Suppose there is a community estate of 400 acres of land, all of equal value, if improvements be not considered. The land without improvements is worth $10 per acre, or a total of $4,000; 300 acres are improved, and the improvements are of the value of $4,000, making the total value of the entire tract $8,000. As the survivor of the community, the wife would be entitled to $4,000 worth of the land. There is set aside to her in fee 150 acres, on which the improvements are worth $2,500, making the value of the 150 acres awarded to her $4,000. But there is also set aside to her use as a homestead 200 acres, including the 150 acres set aside to her in fee. Thus she would receive what she is entitled to in fee and as a homestead. There are two children, who are each entitled to equal portions of the remainder of the estate. The 50 acres included in the homestead, but not included in that portion of the land set aside to the wife in fee, has improvements upon it of the value of $1,500, making its value $2,000. The other 200-acre tract is unimproved, and is of the value of $2,000. *It would be inequitable to award one of the children the 50 acres and the other the 200 acres, for the reason that the homestead right of the wife would lessen the market value of the 50 acres in proportion to her age. If she was young, the child to whom this 50 acres was awarded, or its assigns, might have to wait 50 years before coming into possession. In such case, the fact that the 50 acres was burdened with the homestead rights of the wife should be taken into consideration in apportioning the 250 acres between the children.*

*Id.* (emphasis added).

Similarly, in *Rodgers*, the Supreme Court, applying Texas law, ascribed monetary value to a homestead right and explained how the homestead right lessened other parties' interests in the property. 461 U.S. at 698–99, 103 S. Ct. at 2145. In that case, the Court considered whether a property subject to a spouse's homestead interest could be sold to satisfy the other spouse's tax debt.

14

*Id.* at 680, 103 S. Ct. at 2136.  The Court held that the property could be sold but that the non-delinquent spouse was entitled to some proceeds from the sale as compensation for the loss of the homestead estate.  *Id.*  Likening the non-delinquent spouse's interest to a life estate, the Court explained that the amount of proceeds that the non-delinquent spouse would be entitled to (and that the government would therefore not be entitled to as satisfaction of the tax debt) would be affected by that spouse's age.  *Id.* at 698–99, 103 S. Ct. at 2145.

Finally, in *Estate of Johnson v. Commissioner of Internal Revenue*, the federal tax court explained how homestead rights reduce a property's fair market value.  77 T.C. 120, 123 (1981), *rev'd sub nom. Estate of Johnson v. C.I.R.*, 718 F.2d 1303 (5th Cir. 1983).[8]  There, the issue was whether the "date of death value of homestead property owned by [a] decedent [as her separate property] should be reduced or discounted on account of the homestead rights of [the] decedent's surviving spouse."  *Id.* at 120.  The tax court held, "The value of the interest decedent possessed at death is less than that of the same property unencumbered by homestead rights, and we cannot totally disregard those rights in determining values."  *Id.* at 123.  The court explained that the "fair market value of property subject to restrictions is generally recognized to be less than that of the same property unrestricted."  *Id.* at 127.

---

[8]The Fifth Circuit in *Johnson* reversed the tax court on statutory grounds but did not differ with the tax court's conclusion that a homestead right has value or with the tax court's statement of the principle that a surviving spouse's homestead right affects a property's market value.  *See* 718 F.2d at 1312–16.

Likewise, we conclude that Hollis's constitutional surviving homestead right in the Winton Terrace Property reduced the fair market value of the property; the homestead interest affected what a willing buyer would pay a willing seller for the remainder interest held by Barbara's estate. *See Phillips*, 475 S.W.3d at 278; *Laster*, 826 S.W.2d at 129; *City of Austin*, 153 Tex. at 332–33, 267 S.W.3d at 814; *Meyers*, 162 S.W. at 957; *see also Dominguez v. Castaneda*, 163 S.W.3d 318, 330 (Tex. App.—El Paso 2005, pet. denied) (stating that homestead laws reduce underlying ownership rights).

Our conclusion in this regard begs a question: To what extent does a surviving spouse's homestead right reduce a property's fair market value? We conclude that we do not need to answer this question here.[9] In the parties' joint submittal of facts and legal issues to the trial court, they stated,

---

[9]But Wolfe presented evidence in the trial court in an attempt to answer the question. The record contains an affidavit from R. Blair Norman, an attorney whose practice mostly concerns wills and estates. In the affidavit, Norman stated,

> If Winton Terrace is judicially determined to have been Barbara Sloan's separate property, it is my opinion that an appraiser asked to determine the fair market value of Barbara's interest in Winton Terrace would have to reduce the fair market value . . . by considering the value of [Hollis's] statutory homestead right. I don't know any way to value Hollis's statutory homestead right other than using the IRS Life Tables. In my opinion, using those tables would be appropriate in determining the value of [Barbara's estate's] interest in Winton Terrace subject to Hollis's homestead right. I have looked at these IRS Life Tables and the tables indicate that Barbara's interest, subject to [Hollis's] right to live in the property for the rest of his life, was 52.654% of the total value of Winton Terrace.

16

If the Court concludes that the property was Barbara Sloan's separate property, then the Court must determine whether Hollis Sloan's homestead right decreased the value of the Estate's interest in the . . . property. *If it did, then his estate does not owe anything to Plaintiff.* If it did not, then Defendant owes Plaintiff $197,000.00. [Emphasis added.]

We conclude that Hollis's homestead right decreased the fair market value of Barbara's estate's interest in the property; thus, according to the parties' stipulation, we conclude that Hollis's estate does not "owe anything" to Sanford.

Sanford challenges these conclusions by arguing that Hollis should be bound to the value that he ascribed to the estate's interest in the property when he filed sworn probate and tax forms. In these documents, Hollis classified the Winton Terrace Property as community property and stated that the estate's

---

Similarly, Emile Denke, a certified public accountant, wrote an affidavit that Wolfe attached to her summary judgment motion. Denke's affidavit stated,

In my opinion, there is no doubt that [Hollis's] homestead interest in Winton Terrace diminishes the value of Barbara's interest. Therefore, Barbara's interest must be valued at something less than $444,000.00.

. . . In my experience, the case law has made it clear that a Texas homestead is to be valued in the same manner as a life estate. . . .

. . . The Internal Revenue Service promulgated life tables to determine the relative value of the life estate owner and the remainderman depending on the age of the life tenant. . . .

. . . Relying on the IRS tables, the value of Barbara Sloan's interest in Winton Terrace at the time of her death was 52.654% of the total value of the property. The value of Hollis Sloan's life estate in the property was 47.346% of the total value as of the date of Barbara Sloan's death.

17

value in the property was $222,000. He did not explicitly swear, as Sanford argues on appeal, that the "fair market value of [the Winton Terrace Property] at the time of Barbara Sloan's death was $444,000." Sanford cites no authority for the proposition that Wolfe may not take a different position concerning the community/separate character of the property, the value of the property, or the effect of Hollis's homestead right on the property than Hollis took when he bought it. Thus, we overrule Sanford's argument in that regard as inadequately briefed.[10] *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Fulgham v. Fischer*, 349 S.W.3d 153, 158 (Tex. App.—Dallas 2011, no pet.) ("[F]ailure to cite legal authority or provide substantive analysis results in waiver of the complaint.").

---

[10]We also note that Sanford did not plead any form of estoppel in the trial court, that Sanford did not move for summary judgment based on estoppel, and that the trial court did not base its judgment on a finding that Hollis's estate was estopped. *See* Tex. R. Civ. P. 166a(c) ("The motion for summary judgment shall state the specific grounds therefor."); *Dyegard Land P'ship v. Hoover*, 39 S.W.3d 300, 306 (Tex. App.—Fort Worth 2001, no pet.) ("A motion for summary judgment must stand or fall on the grounds expressly presented in the motion. Simply stated, a summary judgment cannot be affirmed on grounds never presented to the trial court by the motion." (citations omitted)).

In contrast, Wolfe pled in her answer, "As an affirmative defense, Defendant asserts that, even if the Winton Terrace property was Barbara Sloan's separate property, Hollis Sloan had a homestead interest in the property. As a result, the property exchanged by Hollis Sloan for the Winton Terrace property constituted reasonable, if not full, consideration." And in Wolfe's motion for summary judgment, she expressly argued that Hollis's homestead right decreased the value of Barbara's estate's interest in the property.

18

Sanford also argues that Hollis engaged in self-dealing and violated fiduciary duties when buying the property. He relies, in part, on a recent decision in which we explained,

> An executor's fiduciary duty to the estate's beneficiaries arises from the executor's status as trustee of the property of the estate. A trustee owes to his beneficiaries an unwavering duty of good faith, fair dealing, loyalty, and fidelity. This duty requires that a trustee exercise the judgment and care that persons of ordinary prudence, discretion, and intelligence exercise in the management of their own affairs. "A trustee commits breach of trust not only where he violates a duty in bad faith, or intentionally although in good faith, or negligently but also where he violates a duty because of a mistake."

*In re Estate of Boylan*, No. 02-14-00170-CV, 2015 WL 598531, at *4 (Tex. App.—Fort Worth Feb. 12, 2015, no pet.) (mem. op.) (citations omitted). Sanford contends,

> Hollis, as executor of the Barbara Sloan Estate, and trustee of the Trusts created under her will, had a duty of full disclosure, a duty of fair dealing, a duty of acting as a prudent man, and a duty of loyalty to the beneficiaries of the Barbara Sloan Estate and the beneficiaries of the Trusts. Hollis breached those duties when he conveyed Winton Terrace to himself for substantially less ($222,000) than the fair market value ($444,000) that Hollis and his advisors established. In conducting the transaction in this way, Hollis put his own personal benefit and interests above those of the beneficiaries, and he profited at their expense—directly in violation of his fiduciary duties.

In light of our holding above that Hollis's homestead right decreased the fair market value of the estate's interest in the property, of the trial court's uncontested finding that Hollis was entitled to $25,000 in community reimbursement when he bought the property, and of the explicit authorization in Barbara's will for Hollis to purchase assets from her estate at fair market value,

19

we cannot conclude that Hollis violated fiduciary duties when buying the Winton Terrace Property.[11]

Finally, Sanford relies on cases that are inapposite to the facts and the legal issue presented here. For example, Sanford contends that the supreme court's decision in *Edds v. Mitchell* is "markedly similar" to this case, but there, the life tenant had the authority to sell, rather than buy, the property at issue. 143 Tex. 307, 311, 184 S.W.2d 823, 825 (1945). The supreme court held that the holders of the remainder interest were entitled to proceeds from the sale of the property by the holder of the life estate; the court concluded that the holder of the life estate could not "enlarge his estate into a fee" by selling the property. *Id.* at 312, 184 S.W.2d at 826. Here, however, Barbara's will gave Hollis the authority to convert his homestead interest into a fee interest by purchasing the property at fair market value.

Next, Sanford cites the federal Fifth Circuit's decision in *In re Odes Ho Kim* to refute the idea that the economic value of a homestead interest is identical to a

---

[11]Sanford contends that there is "no support for the proposition that Hollis gets to credit the value of his homestead right against the purchase of [the Winton Terrace Property] in fee simple." While we have not located a case reaching that particular conclusion, we have also not found another case where, like here, an executor who held a homestead right in property was authorized to buy that property from the decedent's estate at fair market value.

Although the trial court based its decision in part on a concern that giving value to Hollis's interest would sanction "self-dealing by an executor," we cannot conclude that such self-dealing occurred when Hollis bought the Winton Terrace Property at fair market value as expressly authorized by Barbara's will.

life estate. 748 F.3d 647, 661–62 (5th Cir. 2014). But in that case, the court reaffirmed the concept that a spouse's homestead right is valuable; the court primarily held that the loss of a non-debtor spouse's homestead right in a forced bankruptcy sale was compensable but that the compensation was limited to a particular amount by statute. *Id.* at 650, 659, 661–63.

Finally, Sanford cites our supreme court's decision in *Lucas v. Lucas* to argue that the surviving spouse's homestead interest is only a possessory interest "that must be protected while also protecting the full *economic* interest held by the fee owner in the property." 104 Tex. 636, 641, 143 S.W. 1153, 1156 (1912). There, the supreme court concluded that a spouse who was dispossessed of a homestead because of condemnation proceedings was entitled to have the proceeds from the condemnation reinvested on another homestead; the court held that the proceeds could not be partitioned and distributed to other parties. *Id.* at 639–42, 143 S.W. at 1154–56. We cannot conclude that *Lucas* impacts the decisive question in this appeal, which is whether Hollis's homestead right impacted the fair market value of the Winton Terrace Property and therefore affected the price for him to buy the property as authorized by Barbara's will.

For all of these reasons, we conclude that the trial court erred in its findings that Hollis bought the Winton Terrace Property for less than full market value, that Hollis breached a fiduciary duty when he bought the property, that Hollis's homestead right had no effect on the property's fair market value, and

21

that Sanford is entitled to $197,000. We hold that Hollis's constitutional homestead right reduced the property's fair market value, and we therefore conclude, in accordance with the parties' joint submittal of facts and legal issues, that Wolfe does "not owe anything" to Sanford. *See Phillips*, 475 S.W.3d at 278; *Laster*, 826 S.W.2d at 129; *City of Austin*, 153 Tex. at 332–33, 267 S.W.3d at 814; *Meyers*, 162 S.W. at 957. We sustain Wolfe's two related issues.

## Conclusion

Having sustained Wolfe's issues, we reverse the trial court's judgment and render a take-nothing judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and GABRIEL, JJ.

DELIVERED: June 16, 2016