Opinion issued November 14, 2024



**In The**

**Court of Appeals**

**For The**

**First District of Texas**

————————————————

**NO. 01-24-00367-CV**

————————————————

**IN RE SURECHOICE UNDERWRITERS RECIPROCAL EXCHANGE,
Relator**

---

**Original Proceeding on Petition for Writ of Mandamus**

---

**OPINION**

Real Party in Interest Nicole Glasper filed suit against Relator SureChoice Underwriters Reciprocal Exchange following its denial of Glasper's insurance claim for property damage. SureChoice filed a Motion to Compel Appraisal and to Abate the trial court proceedings, which Glasper opposed. SureChoice seeks a writ of mandamus commanding the trial court to vacate her order denying the Motion to

Compel Appraisal and ordering the trial court to compel the parties to engage in the appraisal process.

We reject Glasper's argument that SureChoice waived the appraisal provision in the insurance policy by denying coverage of her claim and not invoking appraisal until after she filed suit. The insurance policy mandates appraisal and Glasper has not shown a basis for denying enforcement of the appraisal provision.

We conditionally grant mandamus relief to compel the appraisal.

## Background

The underlying case involves a lawsuit brought by Glasper for claims arising from SureChoice's handling of her property damage insurance claim.[1] SureChoice issued to Glasper an insurance policy, effective April 2022, that provided coverage for her home ("Policy"). Among other provisions, the Policy contained an appraisal clause that states:

> F. Appraisal
>
> If you [Glasper] and we [SureChoice] fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers

---

[1] The underlying case is *Nicole Glasper v. SureChoice Underwriters Reciprocal Exchange*, Cause No 2024-06021, pending in the 234th District Court of Harris County, Texas, the Honorable Lauren Reeder presiding.

2

submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss. Each party will:

1.  Pay its own appraiser; and

2.  Bear the other expenses of the appraisal and umpire equally.

The Policy also included a "Waiver or Change of Policy" provision, stating that "[a] waiver or change of a provision of this [P]olicy must be in writing by us [SureChoice] to be valid.  Our request for an appraisal or examination will not waive any of our rights."

On August 29, 2023, Glasper submitted a claim to SureChoice for damage to her property allegedly sustained during a storm on April 5, 2023.  SureChoice's adjuster inspected Glasper's property and prepared an estimate of damages totaling $1,502.77.  The adjuster ultimately determined that the covered damage was below the Policy's deductible amount, and as a result, denied the claim.[2]  Glasper argued the adjuster had "grossly undervalued the cost of repairs in its estimate and yielded an unrealistic amount to underpay coverage."  Glasper hired her own adjuster who found there was "$28,596.49 worth of damage to the property caused by the hail/windstorm event."  According to Glasper, her adjuster found "additional storm

---

[2]     According to Glasper, "[a]fter . . . depreciation and $1,000[] deductible, [she] was left without adequate funds to make repairs on the entirety of h[er] claim."

damage that was completely absent from" the estimate prepared by SureChoice's adjuster.

SureChoice requested that its engineer reinspect the property, but the inspection revealed no additional hail- or windstorm-related damage. On October 10, 2023, SureChoice informed Glasper that its engineer had "determined that the roof covering was not damaged by wind and/or hail or by a covered cause of loss" but rather due to "a combination of age-related deterioration, fatigue, inadvertent manmade damage, and/or mechanical damage." According to Glasper, SureChoice "effectively claim[ed] that all remaining damages (all damages beyond [its] original $1,112.37 determination) to the property were caused by something that wa[s] NOT covered by the [P]olicy." (Emphasis in original.)

On October 24, 2023, Glasper issued a demand letter to SureChoice for $28,596.49 in replacement costs for the property's roof, plus $3,002.63 in claimed statutory interest costs and $1,940.00 in attorney's fees. On November 3, 2023, SureChoice rejected Glasper's demand stating: "We must respectfully reject your demand as there was no supportive documentation included with your demand . . . We have concluded our claim review process and our decision coverage will remain the same. Should you wish to provide additional information, and such information

4

has not been previously reviewed by the carrier for consideration, please do so at your earliest opportunity."[3]

Glasper did not respond. Instead, she filed the instant suit against SureChoice on January 30, 2024, asserting causes of action for breach of contract, violations of the Insurance Code, breach of duty of good faith and fair dealing, and violations of the Deceptive Trade Practices Act. Glasper sought $28,596.49 in actual damages.

SureChoice was served with Glasper's suit on February 26, 2024. The following day, on February 27, 2024, SureChoice sent a letter to Glasper invoking and demanding appraisal under the Policy and designating its appraiser, stating: "It appears that an impasse has been reached between Nicole Glasper and S[ureChoice] regarding the amount, if any, of Ms. Glasper's loss. S[ureChoice] thus invokes and demands appraisal pursuant to the Policy." SureChoice stated that its letter was "not intended to be, and should not be construed as, a waiver of any of [its] rights, defenses, terms, conditions, and/or exclusions available under the Policy or Texas law, whether or not specifically addressed in this letter." Glasper responded by email on March 12, 2024, stating without explanation or elaboration, "We do not agree with appraisal."

---

[3]     SureChoice's November 3, 2023 letter is not included in the record. The letter, however, was attached as Exhibit B to Glasper's Response to SureChoice's Motion to Compel, and Glasper's Response to SureChoice's Petition for Writ of Mandamus contains an excerpt from the letter, including the quoted language.

On March 18, 2024, SureChoice field an answer and an Opposed Motion to Compel Appraisal and to Abate requesting that the trial court compel appraisal and abate the lawsuit until after completion of the appraisal. SureChoice argued that it was contractually entitled to an appraisal under the Policy, and that it had not waived its right because there was no written waiver of its right, as required by the Policy, and Glasper could not establish prejudice.

Glasper filed a response arguing that because SureChoice had not invoked appraisal within the 60-day statutory notice following her demand letter, SureChoice "effectively [had] waived its right to do so." Glasper also argued that because "the crux of the case" involves matters of causation, and "[a]ppraisal is useful to resolve a gap between coverage positions of the two parties," an appraisal here "is simply not necessary" because "[it] does not resolve causation issues." Glasper stated that if she were "forced to comply with an appraisal process during an abatement, [SureChoice] could simply reject the appraisal award after it is complete (in whole or in part), claiming that the damages set by the award were not caused by hail and wind and therefor[e] are not covered by the [P]olicy," "result[ing] in a complete waste of time and money for the parties . . . ."

SureChoice filed a reply arguing it had not waived its appraisal right but rather invoked appraisal immediately upon service of the lawsuit on February 27, 2024, only four months after Glasper had made her demand. SureChoice contended that

"[t]o adopt [Glasper's] argument that one party can deem the other party to have waived its rights under [an appraisal] clause[], simply because the first party *chooses* to litigate rather than honor such clauses, is not only contrary to Texas law but to common sense as well." (Emphasis in original.) SureChoice argued that Glasper had "not shown or even alleged prejudice . . . ." and thus she could not establish waiver.

The trial court denied SureChoice's Motion to Compel Appraisal. SureChoice filed a Motion to Reconsider arguing it had not waived its appraisal right, that the trial court's ruling was "against the great weight of Texas law," and that Glasper would not be prejudiced if compelled to participate in the appraisal process because there were no immediate deadlines on the docket control order. SureChoice further reiterated that under the Policy, it had a contractual right to appraisal.

Glasper filed an opposition to SureChoice's Motion to Reconsider arguing that SureChoice had presented nothing new for the court's consideration. Glasper again argued that "appraisal does NOT resolve causation issues and" thus, because "SureChoice's denial [of coverage] is based on causation reasons (i.e., claiming the damage was *not* caused by a *covered* occurrence) as opposed to a dollar amount dispute of a *covered* occurrence[,] SureChoice's Motion [to Reconsider] must be denied." (Emphasis in original.)

The trial court denied SureChoice's Motion to Reconsider and this mandamus proceeding followed.

**Standard of Review**

Mandamus is an extraordinary remedy that is available only in limited circumstances. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). To secure mandamus relief, a relator must establish that (1) the trial court committed a clear abuse of discretion or violated a duty imposed by law, and (2) there is no adequate remedy by appeal. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court abuses its discretion when "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law." *In re Cerberus Capital Mgmt. L.P.,* 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (internal quotation marks and citations omitted).

Mandamus will not issue when there is a clear and adequate remedy at law. *Walker*, 827 S.W.2d at 840. We review the adequacy of an appellate remedy by balancing the benefits of mandamus review against its detriments. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). We consider whether mandamus will "preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and

spare [the litigants] and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *In re Prudential Ins. Co. of America*, 148 S.W.3d at 136. An appellate remedy is not inadequate merely because it may result in more expense or delay than obtaining a writ. *Walker,* 827 S.W.2d at 842.

### Appraisal Clauses

Appraisal clauses, commonly found in homeowners' insurance policies, "provide a means to resolve disputes about the amount of loss for a covered claim." *In re Universal Underwriters of Tex. Ins. Co.,* 345 S.W.3d 404, 406–07 (Tex. 2011) (orig. proceeding). "Appraisals can provide a less expensive, more efficient alternative to litigation," and they "should generally go forward without preemptive intervention by the courts." *Id.* (quoting *State Farm Lloyds v. Johnson,* 290 S.W.3d 886, 895 (Tex. 2009)). Trial courts have no discretion to ignore a valid appraisal clause. *Johnson*, 290 S.W.3d 886, 888 (Tex. 2009) (holding that "appraisals should generally go forward without preemptive intervention by the courts"); *see also In re Slavonic Mut. Fire Ins. Ass'n,* 308 S.W.3d 556, 559 (Tex. App.–Houston [14th Dist.] 2010, orig. proceeding) ("Where an insurance contract mandates appraisal to resolve the parties' dispute regarding the value of a loss, and the appraisal provision has not been waived, a trial court abuses its discretion and misapplies the law by refusing to enforce the appraisal provision."). Absent illegality or waiver, appraisal clauses are

generally enforceable. *In re Universal Underwriters of Tex. Ins. Co.,* 345 S.W.3d at 407.

A trial court's abuse of discretion in failing to enforce an appraisal clause cannot be remedied by appeal. *Id.* at 412; *see also In re State Farm Lloyds*, 514 S.W.3d 789, 795 (Tex. App.—Houston [14th Dist.] 2017) (orig. proceeding) (holding that trial court abused discretion by refusing to enforce valid appraisal clause and appellate remedy not adequate to correct error); *In re Liberty Ins. Corp.,* 496 S.W.3d 299, 232 (Tex. App.—Houston [1st Dist.] 2016) (orig. proceeding) (same).

### Abuse of Discretion

SureChoice argues the trial court abused its discretion by denying its Motion to Compel Appraisal because it has a contractual right to appraisal, and it never waived its right. Glasper responds that SureChoice waived its appraisal right because it did not invoke appraisal until after filing suit and because it denied her claim, stating an impasse had been reached. Glasper also argues that appraisal "is simply not suitable" because SureChoice's denial of her claim was based on causation grounds.

We reject Glasper's waiver argument. Neither the denial of Glasper's claim nor the timing of SureChoice's demand for appraisal resulted in waiver. SureChoice

has a contractual right to appraisal which it never waived. The trial court abused its discretion in denying the Motion to Compel.

**1.   *SureChoice did not waive its appraisal right when it denied Glasper's claim.***

Waiver requires intent, "either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d at 407. In the context of appraisal, to "constitute waiver the acts relied on must be such as are reasonably calculated to induce the assured to believe that a compliance by [her] with the terms and requirements of the policy is not desired, or would be of no effect if performed. The acts relied on must amount to a denial of liability, or a refusal to pay the loss." *In re Liberty Ins. Corp.,* 496 S.W.3d at 232 (quoting *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d at 407). Ordinarily, waiver is a question of fact, but when the facts are admitted or clearly established, waiver is a question of law. *Id.* at 233. The party challenging the right to appraisal bears the burden to establish waiver. *In re State Farm Lloyds*, 514 S.W.3d at 792.

Glasper argues that because SureChoice denied her claim and an impasse was reached, SureChoice waived its appraisal rights. We disagree. Taking into consideration all relevant factors, we cannot conclude SureChoice waived its appraisal rights.

11

The facts giving rise to this mandamus proceeding are undisputed. When SureChoice first inspected Glasper's property, it acknowledged that the Policy covered part of the loss, but it denied Glasper's claim because the amount of the loss fell below the Policy's deductible. Glasper claimed there was additional damage, but SureChoice denied coverage for the additional damage concluding it was not covered under the Policy. SureChoice's denial of Glasper's claim was thus not based solely on coverage. But even if it were, that does not preclude an appraisal from moving forward. *Johnson*, 290 S.W.3d at 893 ("Even if the appraisal here turns out to involve not just damage but liability questions, that does not mean appraisal should be prohibited as an initial matter."); *In re Liberty Insurance Corp.*, 496 S.W.3d at 234 (holding that insured's denial of insurance claim did not amount to waiver of insured's right to appraisal).

As the Texas Supreme Court recognized in *State Farm Lloyds v. Johnson*, appraisals may be helpful even when an insurer denies a claim. 290 S.W.3d at 894. *Johnson* and the present case involve similar facts. In *Johnson*, the insured filed a claim under her homeowners' insurance policy for damage to her roof following a hailstorm. The adjuster determined that while there was some covered damage, the repair costs were lower than the policy's deductible. *Id.* at 887. By contrast, the insured's contractor determined that the entire roof had to be replaced and the insured requested an appraisal under the policy. *Id.* The insurer refused to

12

participate in the appraisal process arguing, like Glasper does here, that because the parties' "dispute concerned causation and not 'amount of loss,'" appraisal was not applicable. *Id.* at 888. The insured filed a declaratory judgment seeking to compel appraisal. The trial court granted summary judgment in favor of the insurer agreeing "that no appraisal was warranted," but the court of appeals reversed, holding "that appraisal was required." *Id.* The Texas Supreme Court affirmed, holding the insurer could not avoid appraisal "merely because there might be a causation question that exceeds the scope of appraisal." *Id.* at 893 (noting "appraisal can be structured in a way that decides the amount of loss without deciding liability questions"). As the court explained,

> . . . when an indivisible injury to property may have several causes, appraisers can assess the amount of damage and leave causation up to the courts. When divisible losses are involved, appraisers can decide the cost to repair each without deciding who must pay for it. When an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong. And when the parties disagree whether there has been any loss at all, nothing prevents the appraisers from finding "$0" if that is how much damage they find.

*Id.* at 894. Thus, *Johnson* clarified that appraisal is not precluded merely because there are disputed issues involving coverage.

An insurer's denial of a claim is also not dispositive on the issue of waiver. In *In re Liberty Insurance*, we explained that "[w]hether an insurer denied a homeowner's claim for damages under the governing policy is relevant to the question of waiver of the appraisal clause, but it is not determinative of that

13

question." *In re Liberty Ins. Corp.*, 496 S.W.3d at 235 (holding that "denial of a homeowner's claim for damages does not, by itself, constitute an 'intentional relinquishment of a known right' or conduct 'inconsistent with claiming' the right of appraisal") (quoting *In re Universal Underwriters of Tex. Ins. Co.,* 345 S.W.3d at 407); *see In re State Farm Lloyds*, 514 S.W.3d at 794 (same)). Rather, to determine whether an insurer "waived its right to invoke an appraisal clause, we must also consider the language of the Policy, as well as whether the insurer expressed its intent to reserve its appraisal rights." *In re Liberty Ins. Corp.,* 496 S.W.3d at 235.

Based on the policy and the insured's actions in *In re Liberty Insurance*, we held the insurer had not waived its appraisal rights by issuing a letter to the insured denying his claim.[4] *Id.* The insurer's letter stated:

> We have recently reviewed your homeowner's claim and have determined that no storm related damages were found. Your policy affords coverage when physical damage occurs to your covered property resulting from a covered event. As no storm related damages were found, we are closing our file. We regret that we are unable to assist you further in this matter.

---

[4]  In *In re Liberty Insurance*, the insured submitted an insurance claim for damage to his property following a storm. 496 S.W.3d 299, 233 (Tex. App.—Houston [1st Dist.] 2016) (orig. proceeding). *Id.* The insurer denied his claim, concluding "no storm related damages" had been found. *Id.* The insured sent a demand letter to the insurer and filed suit. After the parties attempted mediation, the insurer invoked the appraisal clause of the policy. *Id.*

14

*Id.* at 233. We held that notwithstanding the insurer's denial, the insurer had reserved its right to invoke appraisal because the policy required waiver to be in writing and the record did not include any such writing, and the insurer had expressly reserved its right to invoke appraisal in letters to the insured and in filed court pleadings. *Id.* at 235. Even though the appraisal clause stated that it applied when the parties "fail[ed] to agree on the amount of loss" and the case "involve[d] a dispute over causation," we held appraisal was still appropriate because the insurer had not waived appraisal and when "an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong." *Id.* at 234–35 (citing *Johnson,* 290 S.W.3d at 894); *see also In re State Farm Lloyds*, 514 S.W.3d at 792 (holding that insurer did not waive appraisal by denying coverage for most of damage where remaining covered damage fell below policy's deductible).

The same is true here. Even though Glasper is correct that the Policy expressly provides that appraisal applies when the parties "fail to agree on the amount of loss" and here there are issues involving coverage, appraisal is not precluded as an initial matter. *See Johnson*, 290 S.W.3d at 893 (holding that involvement of liability questions does not mean appraisal should be prohibited as initial matter). As the court explained in *Johnson*, appraisal may move forward so that the "appraiser[] can assess the amount of damage" leaving "causation up to the courts." *Id.* at 894. And if "divisible losses are involved," the "appraiser [] can

15

decide the cost to repair each without deciding who must pay for it." *Id.* ("When an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong."); *see also In re Liberty Insurance Corp.*, 496 S.W.3d at 234 (holding that insurer had not waived appraisal even though it denied insurance claim and case involved issues of causation). Moreover, as in *In re Liberty Insurance,* the Policy here unequivocally states that "waiver or change of a provision of this Policy must be in writing by [SureChoice] to be valid." There is nothing in the record reflecting SureChoice waived its appraisal rights in writing.

Citing to her own demand letter, which states Glasper "has reached an impasse in her attempts to resolve her claim," Glasper still argues that SureChoice waived appraisal because the parties effectively reached an impasse. We disagree. Impasse is reached when "the parties have exhausted any prospect of reaching an agreement and further discussion would be fruitless." *In re QBE Specialty Ins. Co.*, No. 01-19-00164-CV, 2020 WL 6140180, at *4 (Tex. App.—Houston [1st Dist.] Oct. 20, 2020) (orig. proceeding). "Knowledge that the insured disagrees with the insurer's position as to the claim is not sufficient to establish impasse." *Id.* And relevant here, "[i]mpasse arises only if *both* parties 'believe additional negotiations would be futile.'" *Id.* (quoting *In re Acceptance Indem. Ins. Co.*, 562 S.W.3d 655, 660 (Tex. App.—San Antonio 2018) (orig. proceeding)) (emphasis in original).

In response to Glasper's demand letter, SureChoice did not express that an impasse had been reached. It stated that it had reviewed Glasper's demand letter and that "[w]e must respectfully reject your demand as there was no supportive documentation included with your demand . . . includ[ing] an estimate and photographs, an engineer report or expert report of your own, for us to review." Rather than ending any further discussion, SureChoice's letter further stated, "[s]hould you wish to provide additional information, and such information has not been previously reviewed by the carrier for consideration, please do so at your earlier opportunity." Rather than responding to SureChoice's request for additional information or providing estimates or documentation to support her demand, Glasper filed suit. One day after receiving service of Glasper's suit, SureChoice "invoke[d] and demand[ed] appraisal pursuant to the Policy." On these facts, Glasper has not established the existence of "a *mutual* understanding that neither [party] will negotiate further," and she thus failed to demonstrate that an impasse occurred. (Emphasis added.) *See In re Universal Underwriters of Tex. Ins. Co.,* 345 S.W.3d at 410 (holding that when insurer left file open should insured wish to pursue further discussion, court would not "infer waiver where neither explicit language nor conduct indicates that such was the party's intent").

17

**2.** *SureChoice did not waive its appraisal rights by invoking appraisal after Glasper filed her suit.*

Glasper also argues that SureChoice "in effect waived [a]ppraisal" by not invoking appraisal before suit was filed. Glasper argues that when SureChoice invoked appraisal, she "had already filed suit and chosen the litigation route," and thus SureChoice "waived appraisal." We reject Glasper's arguments.

First, the Policy requires waiver in writing, and there is no evidence of any such writing. Second, Glasper's decision to file suit says nothing about SureChoice's right to invoke appraisal under the Policy. The Policy provides that if the parties disagree on the amount of a loss, "*either* may demand an appraisal of the loss." Thus, because the right of appraisal is mutual, Glasper's decision to file suit did not compromise SureChoice's contractual right to invoke *its* appraisal right.

Third, nothing in the Policy provides a deadline by when appraisal must be invoked. And Glasper has cited no authority suggesting that the timing involved here is tantamount to waiver. Glasper quotes from *Johnson* stating that "[a]ppraisal is intended to take place before suit is filed," but the context of that quote reflects that the court was explaining that when invoked, appraisal "is a condition precedent to suit." *See Johnson*, 290 S.W.3d at 895. The court did not, as Glasper suggests, hold that appraisal must be invoked prior to suit. Rather, when analyzing waiver in the context of appraisal, courts focus on the parties' conduct. *See In re Universal Underwriters of Texas, Ins. Co.*, 345 S.W.3d at 407-08 (holding that courts focus on

18

parties' conduct as "indication[] of waiver" and while timing may be relevant to parties' intention, "it alone is not the standard by which courts determine the reasonableness of a delay.").

Glasper has not shown that the timing of SureChoice's demand for appraisal was unreasonable. As Glasper concedes, SureChoice invoked its appraisal rights four months after receiving her demand letter and only one day after receiving service of her suit. This was not an unreasonable delay or conduct inconsistent with SureChoice's appraisal rights. *See id.* (finding no waiver where insurer sought appraisal one month after suit was filed and concluding appraisal was invoked within reasonable time after parties reached impasse); *In re Liberty Ins. Corp.*, 496 S.W.3d at 233 (granting mandamus relief where insurer invoked appraisal after suit filed and after parties participated in mediation, and concluding there was no evidence that insurer waived appraisal in writing). And even if SureChoice had unreasonably delayed, "mere delay is not enough to find waiver; a party must show that it has been prejudiced." *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d at 411. Glasper does not argue she was prejudiced in any way by SureChoice's purported delay in invoking appraisal. Glasper only argues that appraisal would be a waste of time because this is a case involving a coverage dispute, an argument we have already addressed and discounted. *See Johnson,* 290 S.W.3d at 894 ("When an

insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong.").

In short, the evidence does not reflect that SureChoice intentionally relinquished its appraisal rights or engaged in intentional conduct inconsistent with claiming its rights. *See In re Universal Underwriters of Tex. Ins. Co.,* 345 S.W.3d at 407 (holding that waiver requires intent shown by "either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right"). The trial court abused its discretion in denying SureChoice's Motion to Compel Appraisal.

## Adequate Appellate Remedy

The Texas Supreme Court has held that refusal to enforce an appraisal clause is an abuse of discretion that cannot be remedied by appeal. *Id.* at 412 ("[M]andamus relief is appropriate to enforce an appraisal clause because denying the appraisal would vitiate the insurer's right to defend its breach of contract claim."); *see also In re Liberty Ins. Corp.,* 496 S.W.3d at 235 ("We conclude that the trial court abused its discretion by denying [the insurer's] motion to compel appraisal and that [the insurer] has no adequate appellate remedy to correct this error.").

We thus hold that SureChoice lacks an adequate appellate remedy and mandamus relief is appropriate.

20

**Abatement**

When the trial court denied SureChoice's Motion to Compel Appraisal, it also denied its corresponding Motion to Abate pending the appraisal process. Because the trial court denied SureChoice's Motion to Compel, there was no need to consider the necessity of abatement during appraisal. In its mandamus petition, SureChoice does not separately challenge the trial court's denial of its Motion to Abate. Given our conditional grant of mandamus relief to compel appraisal, SureChoice may re-urge in the trial court its request for abatement pending the appraisal process.

**Conclusion**

We conditionally grant mandamus relief as to SureChoice's request to compel an appraisal. We direct the trial court to (1) vacate its April 25, 2024 order denying SureChoice's Motion to Compel Appraisal and (2) order the parties to engage in the appraisal process. The writ will issue only if the trial court fails to do so.

Veronica Rivas-Molloy
Justice

Panel consists of Chief Justice Adams and Justices Rivas-Molloy and Gunn.

21